STATE OF NORTH CAROLINA v. DOUGLAS OLIVER McCALL

No. COA03-102

(Filed 6 January 2004)

### 1. Evidence— results of DNA and enzyme test—motion in limine

Although defendant contends the trial court erred in an indecent liberties with a minor and attempted first-degree rape case by granting the State's motion in limine allowing the suppression of the results of DNA and enzyme tests performed on the minor victim's underwear, this assignment of error is dismissed because the trial court reversed its ruling and explicitly stated the laboratory report could be admitted into evidence if defendant chose to do so, but defendant never offered the laboratory report into evidence.

**2. Criminal Law— hand signals to child witness—plain error analysis inappropriate**

Although defendant contends the trial court committed plain error in an indecent liberties with a minor and attempted first-degree rape case by failing to declare a mistrial sua sponte after it had been alerted that individuals in the courtroom were signaling to the child witness during her testimony, this assignment of error is waived because plain error review is restricted to issues involving either errors in the trial court's instructions to the jury or rulings on the admissibility of evidence.

**3. Evidence— expert testimony—hypothetical questions**

The trial court did not err in an indecent liberties with a minor and attempted first-degree rape case by allowing a child psychologist to testify about hypothetical evidence, because: (1) the expert's testimony could help the jury understand the behavior patterns of sexually abused children and assist in assessing the credibility of the victim; (2) the fact that the expert's testimony took the form of hypothetical questions and was based on information related to her by a third party does not affect the admissibility of her opinion, but instead goes to the weight of the evidence; (3) although the expert testified at least twice that her opinion was not based upon personal observation of the child, the source of her information about the child did not lessen her qualifications as a psychologist or her expertise in treating the victims of sexual abuse; and (4) the DSS report, the child's statement to police, and interviews with other medical or psychological evaluators provided sufficient information to form the basis for the witness's expert opinion.

Appeal by defendant from judgments entered 18 October 2002 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 1 December 2003.

*Attorney General Roy Cooper, by Assistant Attorney General M. Lynne Weaver, for the State.*

*Mary March Exum for defendant-appellant.*

EAGLES, Chief Judge.

Defendant Douglas Oliver McCall appeals from his convictions of indecent liberties with a minor and attempted first-degree rape.

Defendant presents three arguments on appeal: that the trial court erred (1) by allowing the State's motion to suppress the results of the DNA and enzyme test; (2) by failing to inquire *sua sponte* into alleged hand signals to a child witness who was testifying; and (3) by allowing a child psychologist to testify upon hypothetical evidence. After careful consideration of the transcript, record and briefs, we find no error.

The complaining witness in this case, A.B., was a ten-year-old fifth-grader at the time of trial. At the time of the alleged sexual assaults by defendant, A.B. was seven years old. Defendant was A.B.'s step-grandfather, whom she called "Paw paw." Defendant was in his mid-thirties at the time of trial.

A.B. described several occasions when defendant inappropriately touched her while she visited defendant and her grandmother. These incidents all occurred after Thanksgiving 1999. A.B. said that defendant rubbed her breasts while she was watching television sometime between Thanksgiving and Christmas 1999. On another day around Christmas, defendant forced A.B. to watch a pornographic movie while he rubbed her breasts and pubic area. A.B. stated that defendant put his "privacy" into her "privacy" in another encounter. A.B. testified that on 7 January 2000 defendant performed cunnilingus on her while her grandmother was asleep.

A.B. testified that on the Sunday evening before 12 January 2000, while her grandmother was asleep upstairs, she was watching television in the living room and covered up with a blanket. Defendant pulled the blanket away, sat on her feet and attempted to remove her panties. He touched her breasts and pubic area and kissed her neck. Defendant then laid down on her and "started moving up and down" on A.B. Defendant masturbated and ejaculated. Once she got away from defendant, A.B. ran upstairs and locked herself in the bathroom until her grandmother woke up.

On 12 January 2000, A.B.'s mother saw her jumping on the bed after A.B. returned from a visit with her grandparents. A.B.'s mother observed that the child's underwear were ripped and asked how that happened. A.B. replied that it happened when defendant began "messing" with her. A.B. had not changed underwear since she returned from visiting with her grandparents three days earlier. A.B.'s mother called the police immediately and the investigation began.

A school counselor, Dr. Lynn Marder, interviewed A.B. at her mother's request. A.B. told Dr. Marder that defendant had threatened

to kill her grandmother and mother if A.B. told them what defendant did to her. A.B. also told Dr. Marder that part of the statement she made to police earlier was a lie; defendant never tied her up with a rope and never threatened her with a knife. Dr. Marder testified that A.B. was afraid to be alone outside or at the bus stop and felt that she was to blame for not being able to see her grandmother.

A.B.'s mother testified that after the child told her about the alleged contact with defendant, the child's personality changed. According to her mother, A.B. became "distant" and "started rebelling." A.B. started spending time alone, while the child previously had been much more social. In addition, during the time period of the alleged attacks, A.B. frequently had nightmares.

Susan Vaughn, an expert witness for the State, testified about the common characteristics and behaviors of children who have experienced sexual abuse. Vaughn did not interview A.B. or hear her testify in court. Vaughn based her opinion upon the reports by the Department of Social Services, the police report and the medical exam report, in addition to discussions regarding the child's testimony with the prosecutor. Vaughn opined that A.B.'s behavior and characteristics were consistent with those of a child who has been sexually abused.

The State moved to suppress the results of the DNA test performed on victim's underwear, which were worn during the most recent alleged incident. No DNA material on the underwear was linked to defendant. Defendant argued that this laboratory report should be admitted because the test revealed "a weak presumptive result for amylase." Defendant contended that the presence of amylase and absence of defendant's DNA indicated that defendant did not perform any sexual acts with A.B.

The trial court allowed the State's motion to suppress, but indicated that it would reconsider the admissibility of the test results if the evidence warranted that reconsideration.

On cross-examination, A.B. testified that defendant performed cunnilingus on her. The trial court reversed its ruling on the laboratory report and stated that the report was now admissible as a result of the testimony by A.B. After the State completed its presentation of evidence, defendant did not introduce the laboratory report or offer any other evidence.

Defendant was indicted for attempted first-degree rape, first-degree sex offense, and two counts of indecent liberties with a minor. During trial, the trial court dismissed one count of indecent liberties with a minor. The jury found defendant guilty of attempted first-degree rape and one count of indecent liberties with a minor. The jury found defendant not guilty of first-degree sex offense. Defendant was sentenced to a term of 200 to 249 months of imprisonment for attempted first-degree rape and 22 to 27 months of imprisonment for the indecent liberties conviction. Defendant appeals.

[1] Defendant argues that the trial court erred by granting the State's motion *in limine* and suppressing the laboratory report. Defendant contends that the DNA evidence was relevant because it tended to exonerate defendant. Defendant argues that the trial court's reversal of its original ruling on the motion to suppress was not sufficient to prevent error. We disagree.

An objection to a trial court's ruling on a motion *in limine* is not sufficient to preserve the issue for appeal. *See State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845-46, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). A trial court may change its ruling on a pre-trial motion *in limine* during the presentation of the evidence. *See T&T Development Co. v. Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 602, 481 S.E.2d 347, 348-49, *disc. rev. denied*, 346 N.C. 185, 486 S.E.2d 219 (1997). In order to preserve the underlying evidentiary issue, "[a] party . . . is required to object to the evidence at the time it is offered at the trial (where the motion was denied) or attempt to introduce the evidence at the trial (where the motion was granted)." *State v. Hill*, 347 N.C. 275, 293, 493 S.E.2d 264, 274 (1997) (quoting *T&T Development Co.*, 125 N.C. App. at 602, 481 S.E.2d at 349), *cert. denied*, 523 U.S. 1142, 140 L. Ed. 2d 1099 (1998).

Here, defendant never offered the laboratory report into evidence. Defendant vigorously argued the report's relevance during the pre-trial hearing on the State's motion *in limine*. The trial court initially granted the motion, but clearly stated that its ruling was subject to change once the evidence was presented:

THE COURT: [A]t this point I will allow the State's motion.

However, if evidence develops in the course of the trial that makes it relevant, arguably relevant or somewhere in between that, I certainly will consider it.

I guess what I'm saying is right now for the purpose of jury selection and opening statements I will sustain—allow the State's objection.

However if during the course of the State's presentation of the evidence in chief evidence comes to light that may support your proposition then we will reconsider it.

After the State had presented most of its evidence, the trial court did in fact reconsider the motion and reversed its ruling. The trial court explicitly stated that the laboratory report could be admitted into evidence if defendant chose to do so. This ruling occurred before the State rested its case, which allowed defendant's trial counsel adequate time to consider whether the laboratory report should be admitted into evidence and time to prepare its possible witnesses. Defendant's argument that the trial court's reversal of its ruling constituted unfair surprise is unpersuasive.

Defense counsel never offered the laboratory report into evidence, despite vigorous argument about its admissibility during the pre-trial hearing on the motion *in limine*. Defendant did not offer the evidence, even after he had been given notice by the trial court that the evidence would be admitted. Therefore, according to the standard set forth in *Hill*, the trial court's ruling on the motion to suppress and the admissibility of the laboratory test evidence are not properly before this Court and will not be addressed. This assignment of error is dismissed.

[2] Defendant also argues that the trial court erred by failing to declare a mistrial *sua sponte* after it had been alerted that individuals in the courtroom were signaling to A.B. during her testimony. We disagree.

A trial court is required to "declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." G.S. § 15A-1061 (2003). "It is well settled that a motion for a mistrial and the determination of whether defendant's case has been irreparably and substantially prejudiced is within the trial court's sound discretion." *State v. McNeill*, 349 N.C. 634, 646, 509 S.E.2d 415, 422-23 (1998) (quoting *State v. King*, 343 N.C. 29, 44, 468 S.E.2d 232, 242 (1996)), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999).

STATE v. McCALL

[162 N.C. App. 64 (2004)]

Here, on the second day of testimony, defense counsel told the trial court that someone in the courtroom signaled to A.B. on the first day of her testimony. Before the jury entered the courtroom on the second day of trial, the trial court stated the following:

THE COURT: Before we call for the jury I would like to . . . make an announcement.

I have had two complaints; one from representatives of the defense and one from the attorney for the State regarding matters that will not be tolerated if observed by this Court.

The first involves an allegation of some signals being passed or made while a witness was testifying.

That was made by representatives of the defense.

And I asked Mr. Cook if he had observed such and he had not.

I asked the attorneys for the defendant if they had observed such and they said they had not.

I asked Mr. Cook in an abundance of caution, I suppose, to talk with those who are here supporting the victim in this case or any others that may have engaged in such conduct, not finding that they did, but to caution them that if such is reported again I will consider having a hearing and making some findings and taking appropriate action.

Defendant did not complain of further hand signaling throughout the remainder of the trial. The transcript does not indicate who was allegedly making hand signals to the witness or what type of signals were given. Defendant did not request further action by the trial court, other than the above admonition. Defendant did not move for a mistrial or object to the trial court's method of handling the alleged disruption in the courtroom.

Defendant asserts that the trial court's failure to declare a mistrial constituted plain error. However, the North Carolina Supreme Court has restricted review for plain error to issues "involv[ing] either errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence." *State v. Cummings*, 346 N.C. 291, 314, 488 S.E.2d 550, 563 (1997) (citing *State v. Gregory*, 342 N.C. 580, 467 S.E.2d 28 (1991)), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). Since plain error review is not available here, this assignment of error is waived.

**[3]** Defendant further argues that the trial court erred by admitting the testimony of Susan Vaughn, the State's expert witness. Defendant contends that Vaughn's testimony should not have been allowed because her answers to hypothetical questions misled the jury and created unfair prejudice. In addition, defendant contends that because Vaughn could not testify that A.B.'s behaviors were certainly the result of sexual abuse, Vaughn's testimony did not assist the jury with a matter outside the realm of common knowledge. Defendant argues that because Vaughn did not have individual contact with A.B. before or during trial, her testimony was not relevant. We disagree.

The North Carolina Rules of Evidence state that:

[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

G.S. § 8C-1, Rule 703 (2003). In cases involving sexual assaults on a minor, "[a]llowing experts to testify as to the symptoms and characteristics of sexually abused children and to state their opinions that the symptoms exhibited by the victim were consistent with sexual or physical abuse is proper." *State v. Love*, 100 N.C. App. 226, 233, 395 S.E.2d 429, 433 (1990), *disc. rev. denied*, 328 N.C. 95, 402 S.E.2d 423 (1991); *see State v. Aguallo*, 322 N.C. 818, 370 S.E.2d 676 (1988); *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987); *State v. Johnson*, 105 N.C. App. 390, 413 S.E.2d 562, *disc. rev. denied*, 332 N.C. 348, 421 S.E.2d 158 (1992); *State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988). This type of expert testimony has been relevant in most cases:

While [an expert], based on his experience and training, was not in a better position than the jury to make the ultimate determination of sexual abuse, he was in a better position than the jury, based on his training and experience, to determine what behavior was consistent or inconsistent with children who had been sexually abused.

*State v. Isenberg*, 148 N.C. App. 29, 34, 557 S.E.2d 568, 572 (2001), *disc. rev. denied*, 355 N.C. 288, 561 S.E.2d 268 (2002). In addition, the expert's testimony "could help the jury understand the behavior patterns of sexually abused children and assist in assessing the credibility of the victim." *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 366 (1987).

Here, Vaughn testified that her expert opinion was not based on an interview or examination of the child victim A.B. Vaughn stated that she did not hear the child's testimony and had not talked to the child or the child's family. Vaughn received a summary of A.B.'s testimony from the prosecutor before Vaughn gave her own testimony. Vaughn also reviewed a copy of the child's statement to police, a copy of the Department of Social Services report, and narratives of interviews with A.B. conducted at the Pediatric Resource Center. Vaughn testified about the general characteristics and behaviors of sexually abused children. Vaughn also answered several hypothetical questions about those behaviors from the prosecutor on direct examination and the defense attorney on cross-examination. Vaughn testified that A.B. had been exposed to some type of trauma, which was probably sexual abuse. However, on cross-examination, Vaughn stated that A.B. could have displayed some of the same behaviors as a result of a non-sexual trauma. On cross-examination, Vaughn again stated that her opinion was not based upon a personal examination of the child.

Defendant argues that Vaughn's failure to examine A.B. rendered her expert opinion unreliable and prejudicial. We disagree.

Our Supreme Court has stated that "an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, if such information is inherently reliable even though it is not independently admissible into evidence." *State v. Wade*, 296 N.C. 454, 462, 251 S.E.2d 407, 412 (1979). The fact that Vaughn's expert testimony took the form of hypothetical questions and was based on information related to her by a third party does not affect the admissibility of her opinion, but instead goes to the weight of the evidence. *See State v. Daniels*, 337 N.C. 243, 446 S.E.2d 298 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995) (holding that an opinion based upon reviews of other doctors who had personally examined defendant was admissible); *State v. Purdie*, 93 N.C. App. 269, 377 S.E.2d 789 (1989) (holding that an expert who did not personally observe an accident scene was qualified to testify).

Here, Vaughn testified at least twice that her opinion was not based upon personal observation of the child. The source of her information about A.B. did not lessen her qualifications as a psychologist or her experience in treating the victims of sexual abuse. Most expert witnesses would have relied upon the DSS report, the child's state-

ment to police, her testimony at trial and interviews with other medical or psychological evaluators. Vaughn had firsthand knowledge of all of these sources of information, with the exception of the child's testimony. This information was sufficient to form the basis for Vaughn's expert opinion. Accordingly, we overrule this assignment of error.

No error.

Judges MARTIN and LEVINSON concur.