STATE OF NORTH CAROLINA
v.
BRIDGETTE LEIGH MABRY
No. COA08-729
Court of Appeals of North Carolina
Filed March 3, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Amy C. Kunstling, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.
HUNTER, Robert C., Judge.
On 12 September 2005, Bridgette Leigh Mabry ("defendant") was indicted by a grand jury in Stanly County on eight counts of first-degree statutory sex offense and eight counts of indecent liberties with a child pertaining to her daughter L.V. On 12 March 2007, defendant was indicted on three counts of first-degree statutory sex offense and three counts of indecent liberties with a child, pertaining to her daughter C.V. On 10 July 2006, the State voluntarily dismissed eight of these charges as duplicative. Despite the dismissal, all twenty-two counts were simultaneously brought for jury trial on 27 August 2007, and the jury convicted defendant on all counts on 5 September 2007. The trial judgeconsolidated the convictions and sentenced defendant to 240-297 months imprisonment. Defendant now appeals. After careful review, we find no error in part, vacate in part, and remand for resentencing.

Background
Defendant began living with L.V. and C.V.'s father, Jeff Vanhoy ("Mr. Vanhoy"), in 1996. Prior to meeting Mr. Vanhoy, defendant had a son named Andrew who was born in 1992. C.V. was born on 16 October 1997 and L.V. was born on 27 November 1998. According to trial testimony, defendant and Mr. Vanhoy had a "very volatile" relationship. In 2001, Mr. Vanhoy was convicted of communicating threats against defendant and the two separated that year. Between 2001 and 2004 Andrew, L.V., and C.V. lived with defendant and occasionally saw Mr. Vanhoy.
In February 2004, defendant was injured in a car accident. Between February and April 2004, L.V. and C.V. primarily lived with Mr. Vanhoy and his girlfriend, who he subsequently married in December 2004. In April 2004, while L.V. and C.V. were living with defendant, the Stanly County Department of Social Services ("DSS") received a report that L.V. and C.V. were being neglected by her. On 19 April 2004, social worker Jennifer Burden ("Ms. Burden") went to the house belonging to defendant's mother where defendant and her children were supposedly residing. Photographs were taken of the unsanitary conditions of the house and were admitted into evidence as State's exhibits 1-7. Mr. Vanhoy filed for, and was awarded, temporary custody of L.V. and C.V. in April 2004. Mr.Vanhoy testified that the DSS investigation concluded that L.V. and C.V. were neglected by defendant.
Between April 2004 and May 2005, C.V. and L.V. lived with their father and had infrequent contact with defendant. In May 2005, Mr. Vanhoy refused to allow visitation with defendant and sought permanent custody of C.V. and L.V. A permanent custody hearing was scheduled for 13 July 2005.
The children's stepmother, Christie Vanhoy ("Mrs. Vanhoy"), testified that on 7 July 2005, when L.V. was six years old, L.V. ran into the house crying. She claimed that neighborhood children were picking on her because C.V. told them that she had seen L.V. putting a marker into her genitals. L.V. told Mrs. Vanhoy that defendant had been "putting markers inside her and using her hands on her." L.V. then told her father of the abuse that same day. The following day, 8 July 2005, L.V. was examined by pediatrician Dr. Elaine Coates, who did not find physical evidence of sexual abuse. Dr. Coates notified DSS of L.V.'s report of sexual abuse. Ms. Burden spoke with L.V. on 11 July 2005 regarding the abuse, and L.V. relayed the same allegations. Ms. Burden also spoke with C.V. who mentioned some physical abuse, but not sexual abuse. On 13 July 2005, Mr. Vanhoy was awarded permanent custody of L.V. and C.V. On 30 August 2005, L.V. spoke with Detective Carla Eudy ("Detective Eudy") and informed her of the abuse that began when she was three.
Over a year later, on 31 July 2006, C.V. told her counselor that she too was sexually abused by defendant. C.V. was eightyears old at the time she made the allegations, but claimed the abuse occurred when she was three or four and was living with defendant. C.V. was examined by nurse practitioner Patty Lewis ("Ms. Lewis") who did not find physical signs of sexual abuse. On 1 August 2006, C.V. reported the abuse to Detective Eudy. The claims of L.V. and C.V. resulted in the indictment and trial of defendant on multiple sex offense charges. At the time of trial, C.V. was nine and L.V. was eight.

Argument

I.
Defendant argues, and the State concedes, that the convictions for case numbers 05CRS52890 through 05CRS52897 should be vacated as these charges were voluntarily dismissed by the State prior to trial. Because the trial court consolidated all the convictions for sentencing purposes, the case must be remanded for resentencing.

II.
Defendant next contends that the trial court improperly allowed evidence of defendant's bad character to be presented at trial, which was not relevant to the charges against her and was unduly prejudicial.
Defendant presented a motion in limine before trial to exclude testimony, photographic, or videotape evidence of defendant's bad character. At a pretrial hearing, the trial court deferred ruling on defendant's motion. At trial, the court allowed the evidence tobe admitted. Defendant now assigns error to the admission of this evidence. We will address each piece of evidence in turn.

Exhibits 1-7
At trial, defendant objected to the admission of exhibits 1-7, which were photographs of the house where defendant lived with her daughters when the alleged sexual abuse occurred.
The disputed photos were taken by DSS social worker Jennifer Burden on 19 April 2004 after DSS received a report that defendant was neglecting her children. Under direct examination, L.V. identified these photos as the house where she lived with her mother and where some of the alleged sexual abuse took place. The prosecution later questioned Ms. Burden about the photographs in order to lay a foundation for their admissibility. Upon establishing that Ms. Burden took and developed the photographs, and that the photos were of the home she believed to have been occupied by defendant, the State moved to admit the photos as substantive evidence. The court admitted the photos over defense counsel's objection.
These photos, exhibits 1-7, showed unclean living conditions, and defendant claims that the photos were irrelevant to the charges of sexual abuse, unduly prejudicial, and that they were in fact admitted as evidence of defendant's bad character. We do not find that the trial court erred in admitting the photos as they were relevant, not unduly prejudicial, and did not constitute prohibited character evidence. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). "'Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard . . . such rulings are given great deference on appeal.'" State v. Cowan, ___ N.C. App. ___, ___, 669 S.E.2d 811, 814 (2008) (citation omitted; emphasis added).
Exhibits 1-7 were originally presented to L.V. so she could identify where the alleged sexual abuse occurred. L.V. identified each room in the seven photographs and when the photograph of the bedroom was shown, she stated that she was sexually abused in that particular bed. Furthermore, when L.V. was asked to describe the house where she was abused, she stated that it was "really nasty, and the dirt and stuff was piled over my head and stuff."
Therefore, we find the photographs to be relevant to show where the abuse occurred, since L.V.'s descriptions of "a white house" and "a brown house," as alleged in the indictments, were not specific. The photographs provided evidence of an actual address where the sexual abuse took place that L.V. could identify. The photos also served to corroborate L.V.'s own description of the house where she lived and was abused by defendant.
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). The trial court's Rule 403 analysis is reviewed for abuse of discretion. Cowan, ___ N.C. App. at ___, 669 S.E.2d at 814. Therefore, defendant must show that the trial court's ruling was "'manifestly unsupported by reason and could not have been the result of a reasoned decision.'" State v. Brown, 350 N.C. 193, 209, 513 S.E.2d 57, 67 (1999) (citation omitted).
"The probative value of photographs or images may be eclipsed by its tendency to prejudice if they are inflammatory, excessive, or repetitious." State v. Riffe, ___, N.C. App. ___, ___, 661 S.E.2d 899, 906 (2008). While the photos in this case show that defendant was not maintaining a sanitary household, we do not find that the photos would inflame jurors to find that defendant sexually abused her daughters. Because we find that the photos were relevant and not unduly prejudicial, we find no abuse of discretion in their admission.
Defendant claims that the photos were evidence of other crimes, wrongs or acts and were therefore inadmissable. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007). We disagree with defendant's assertion. The photos could lead some to believe that defendant was neglectful in the manner in which she maintained her home, but the photos did not provide evidence that defendant acted in conformity with the character traits of a sex offender. In sum, we find no error in the trial court's decision to allow exhibits 1-7 into evidence.

Ms. Burden's Redirect Testimony
On redirect, social worker Jennifer Burden testified that when she was at defendant's home taking photographs on 19 April 2004, defendant's mother (the owner of the house), was there cleaning up and said that "she was so angry that her daughter had let the house get in that condition." Ms. Burden also testified on redirect, that due to the condition of the home, and the fact that the children were being left alone there, Mr. Vanhoy was able to get emergency custody of L.V. and C.V. Defendant objected to these statements.
Defendant again claims that Rules of Evidence 401-403 were violated. These claims are without merit. Defense counsel opened the door to these lines of questioning during his cross-examination of Ms. Burden. On cross-examination, defense counsel asked Ms. Burden who was present when she was at defendant's home on 19 April. Ms. Burden said that defendant's mother was there cleaning up. During cross-examination, Ms. Burden also made the statement that defendant's mother was upset about the condition of the house. Counsel also asked Ms. Burden if she knew who caused the house to be in the condition she saw that day. Therefore, on cross-examination, the condition of the house and statements by defendant's mother were addressed, and the door was open with regard to this topic on redirect. See State v. Burgin, 313 N.C. 404, 406-07, 329 S.E.2d 653, 656 (1985) ("[e]vidence . . . becomesadmissible to explain or rebut other evidence put in by the defendant himself").
Defense counsel also opened the door to questioning about the custody dispute between defendant and Mr. Vanhoy. Defense counsel asked, "[d]id you know in April of `04 there was a custody action pending between Jeff [Mr.] Vanhoy and Bridgett Mabry [defendant] over these children?" Ms. Burden responded, "[t]hat's when he [Mr. Vanhoy] took emergency custody of the girls." Thus, defense counsel's questioning regarding the custody dispute opened the door to redirect questioning by the prosecution.
We therefore find no error on the part of the trial court in overruling defendant's objections with regard to Ms. Burden's testimony.

Other Evidence and Closing Argument

Presented at Trial Without Objection
Defendant now contests the admission of: (1) exhibits 8 and 9, videos of "forensic interviews" taken of L.V. and C.V. at the Butterfly House in which, inter alia, they detailed their living conditions and discussed physical and sexual abuse perpetrated against them; (2) the admission of exhibits 10-12, three additional photographs depicting the condition of defendant's home; (3) testimony of Ms. Burden concerning statements C.V. and L.V. made to her about physical abuse and threats made by defendant; and (4) testimony by Mr. Vanhoy about the living conditions in defendant's home, that defendant left the children home alone, and the fact that defendant was charged with neglect by DSS. Defendant further argues that the State's closing argument was improper because the prosecutor repeatedly referred to evidence that should have been excluded, such as the photos, and focused on defendant's physical abuse of the children and the unsanitary condition of the house rather than the alleged sex offenses. Because defendant made no objections at trial, she now requests a plain error review of the evidence presented and argues that the trial court erred in failing to intervene ex mero motu during the prosecution's closing argument.
As to the evidence presented at trial, "'[t]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . ."'" State v. Cummings, 352 N.C. 600, 616, 536 S.E.2d 36, 49 (2000) (citations omitted; alteration added).
Defendant complains that the above listed evidence distracted the jury and focused their attention on defendant's neglect and physical abuse of her children instead of whether defendant committed the sexual acts charged, but defendant fails to argue why any of the evidence, taken individually and in context, amounts to plain error. After careful review of the record, we cannot say that the evidence to which defendant now objects, even if admitted in error, prohibited justice from being done in this case, and therefore the standard of plain error has not been met. We also find that the trial court had no obligation to intervene ex mero motu during the State's closing argument.
The standard of review when a defendant fails to object at trial is whether the argument complained of was so grossly improper that the trial court erred in failing to intervene ex mero motu. "'[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting ex mero motu an argument which defense counsel apparently did not believe was prejudicial when he heard it.'"
State v. Trull, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998) (citations omitted; alteration in original). Defendant claims that the prosecutor: (1) improperly cited to bad character evidence; (2) urged the jury to find defendant guilty; (3) mentioned that defendant physically assaulted C.V.; (4) referenced exhibits 1-7 and the condition of defendant's home multiple times; and (5) stated that Mr. Vanhoy won custody of L.V. and C.V. because of the condition of their home. Aside from claiming that the argument was inflammatory and likely impacted the jury's finding, defendant does not argue why the court was required to intervene based on the ex mero motu standard. After reviewing the closing argument in context, we do not find that it was so grossly improper that the trial judge erred in failing to intervene ex mero motu.

III.
Defendant contends that the trial court erred in allowing Ms. Burden's testimony that C.V. and L.V. were adjudicated neglected in 2004 because such evidence was irrelevant. Defendant also argues that the trial court committed plain error in allowing thetestimony of Mr. Vanhoy that the DSS case "concluded in June of `04 with a neglect charge being found against [defendant]."
In reviewing the verbatim transcript, Ms. Burden did not testify that the girls were adjudicated neglected. She stated that DSS received a report that the girls were neglected and discussed DSS's involvement in the case and that Mr. Vanhoy obtained emergency custody of the girls. Furthermore, much of her testimony in this regard was on redirect, after defense counsel opened the door with questions about the ongoing custody dispute between defendant and Mr. Vanhoy. Moreover, the trial court instructed the jury that there had been a reference to allegations reported to DSS, that these allegations did not pertain to child abuse, and that the trial of this matter was concerned with child abuse. Thus, we do not find error in the admittance of Ms. Burden's testimony.
Mr. Vanhoy, on the other hand, specifically said that the girls were found to be neglected in June 2004 as a result of the conditions of the house and being left home alone.
"It is generally held that a judgment in a civil action is not admissible in a subsequent criminal prosecution although exactly the same questions are in dispute in both cases, for the reason that the parties are not the same, . . . different rules as to the weight of the evidence prevail[, and] it would not be just to convict a defendant in a criminal action by reason of a judgment obtained against him in a civil action [with a lower standard of proof]."
In re J.S.B., D.K.B., D.D.J., Z.A.T.J., 183 N.C. App. 192, 203, 644 S.E.2d 580, 586, supersedeas and disc. review denied, 361 N.C. 693,652 S.E.2d 645 (2007) (DSS, in seeking to terminate mother's parental rights based on finding that mother committed voluntary manslaughter of another child, was required to prove elements of voluntary manslaughter by clear and convincing evidence, rather than beyond a reasonable doubt) (quoting State v. Dula, 204 N.C. 535, 536, 168 S.E. 836, 836-37 (1933) (emphasis added; alteration in original)). Unlike J.S.B., the civil adjudication in this case pertained to neglect, and the criminal proceeding was for sexual offenses; therefore, the prior adjudication was not being used to prove the same set of facts.
The State's evidence tended to show how DSS became involved with L.V. and C.V. and to explain why Mr. Vanhoy obtained emergency custody and then sought to retain custody. In so doing, Mr. Vanhoy revealed that the girls were found to be neglected, and defense counsel failed to object to that statement. The State did not present the adjudication order as evidence or attempt to show that the neglect was tied to the sexual offenses charged.
In reviewing the record, we do not find error, much less plain error, in the admission of Mr. Vanhoy's testimony.

IV.
Defendant next argues that she is entitled to a new trial because the trial court erroneously allowed the prosecutor to conduct an improper cross-examination of defendant, in which the prosecutor asked questions that could not possibly have elicited relevant evidence. Defense counsel objected to several questions posed by the prosecutor during cross-examination, which the trial court sustained. For the remaining portions of the cross-examination that defendant did not object to at trial, but now raises on appeal, defendant requests plain error review.
Defendant assigns error to the following lines of questioning:
1. Physical abuse:
Q Did you never pop your children?
. . .
Q Did you ever leave bruises on the kids?
. . .
DSS had investigated you leaving bruises on your children? . . . .
. . .
[S]everal of your family members had reported to DSS that you were leaving bruises on the kids?"
2. Leaving the children alone:
Q You never left [LV] and [CV] by theirself?
. . .
You left [LV] in her bed by herself and took the other ones to school?
. . .
Q And you want us to think that's the only time you did that?"
3. Mr. Vanhoy winning custody of LV and CV:
Q My question was he got temporary custody based on the fact that you wereleaving [LV] home, and the filth that your children were living in?"
4. Defendant's refusal to cooperate with DSS:
Q Isn't it true that when DSS contacted, you ran?
5. The condition of defendant's home:
Q And that's why there was nothing to eat, because it was a mess, wasn't it?
. . .
Q Was there cat poop on the floor?
. . .
Q And wasn't [your mother] furious at the fact you destroyed her house?
. . .
Q Wasn't [your mother] furious at the fact that her grandchildren lived in that filth?"
6. Presence of a marijuana plant at defendant's home:
Q That marijuana plant on the back porch  did the people just bring that and put that there too?"
With regard to cross-examination of witnesses, our Supreme Court has held counsel [may not] ask impertinent and insulting questions which he knows will not elicit competent or relevant evidence but are designed simply to badger and humiliate the witness. The district attorney should refrain from characterizations of defendant which are calculated to prejudice him in the eyes of the jury when there is no evidence from which such characterization may legitimately be inferred.
State v. Britt, 288 N.C. 699, 711-12, 220 S.E.2d 283, 291 (1975) (citations omitted). Viewed in context, we do not find that the cross-examination rises to the level of plain error as it did not have "'a probable impact on the jury's finding that the defendant was guilty.'" State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted). We do not find that the prosecution was attempting to "badger and humiliate the witness." Britt, supra. While we agree that portions of the cross-examination were unlikely to illicit relevant information pertaining to the sexual offenses, we cannot find that there was a miscarriage of justice rising to the level of plain error.

V.
Defendant next argues that defendant is entitled to a new trial because State witness Patty Lewis's expert opinion testimony was inadmissible. Defendant claims that Ms. Lewis's testimony amounted to an impermissible expert opinion on credibility premised on C.V.'s own claims and an absence of physical findings. Defendant did not object to this testimony, therefore the standard of review is plain error.State v. Hammett, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006).
Our Supreme Court has clearly stated:
In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.
State v. Stancil, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (emphasis omitted; citations omitted). Ms. Lewis testified that when she examined C.V. on 9 October 2006, there were no physical signs of sexual abuse, which was not unusual as the exam took place "several years after the time when the incidents were occurring, . . . ." Defendant takes issue with the words "were occurring." It is clear Ms. Lewis was attempting to say that in general it is not unusual for there not to be signs of sexual abuse years after the abuse occurred. There was no error in this statement as it was not an opinion that C.V. had in fact been abused.
Ms. Lewis later testified that C.V.'s medical records showed she had vaginal bleeding in 2000 when she was two years and ten months old. Ms. Lewis stated that vaginal bleeding in a child that age was unusual. The prosecutor then asked, "[s]o based on your training and experience, is the vaginal bleeding, along with her disclosure, the total of that, consistent with a child that has been sexually abused?" Ms. Lewis responded, "[y]es it is." Ms. Lewis was expressing her expert opinion that C.V.'s claim that objects were being inserted into her vagina at that time, coupled with the abnormal vaginal bleeding that was present during the same time frame, were consistent with sexual abuse. Again, Ms. Lewis did not say that C.V. had been abused.
Defendant further contends that Ms. Lewis's opinion that C.V.'s history and behavior were consistent with that of a child who had been sexually abused was based solely on C.V.'s disclosure, medical records, and vaginal bleeding as there were no physical signs of sexual abuse upon examination. The defendant relies on State v. Hammett, where the Supreme Court found it improper for an expert to testify that based on the victim's statements, the expert would have concluded that the victim was abused even in the absence of physical findings. Hammett, 361 N.C. at 97, 637 S.E.2d at 521-22. The substance of Ms. Lewis's testimony was not analogous to that of the expert in Hammett. Ms. Lewis did not say that absent the behavioral issues presented in the record she would still find that C.V. had been abused. Assuming, arguendo, the testimony was analogous, the Court in Hammett went on to say that the expert's statement did not amount to plain error, which is also the standard for this assignment of error.
We find that the vaginal bleeding, while not conclusively the result of sexual abuse, coupled with C.V.'s history of sleep disturbances, anger issues, and unusual fears, which Ms. Lewis testified were characteristics sometimes seen with abused children, were sufficient for Ms. Lewis to formulate her expert opinion.
Ms. Lewis did make one statement that was improper, which prompted the trial judge to interject and instruct the jury to disregard the statement. Ms. Lewis testified, "[a]nd based on what she had said in her forensic interview, which I have reviewed, and the consistency with that, and with the previous conversations she'd had with Social Services, I felt that there had been sexual abuse." This statement, while highly improper under Stancil, was cured by the instruction. Defendant argues that the trial judgedirected the instruction to "[l]adies and gentlemen," which was unclear, and that the judge did not detail why the statement by Ms. Lewis was improper. These arguments are without merit as it was clear that the instruction was directed to the jury and that he intended for the prior statement of Ms. Lewis, as a whole, to be disregarded. We find that the trial court cured any prejudicial effect of the erroneous testimony by instructing the jury to "strike [the testimony] from [their] minds." See State v. Black, 328 N.C. 191, 400 S.E.2d 398 (1991).
In sum, we find no uncured error in this portion of Ms. Lewis's testimony.

VI.
Defendant next argues that Ms. Lewis's testimony regarding L.V. was erroneous as it lacked a proper foundation. Specifically, defense counsel takes issue with the fact that Ms. Lewis did not examine L.V. Ms. Lewis testified that while she did not physically examine L.V., the child's behavior was consistent with a child that had been sexually abused. According to L.V.'s "charting," Ms. Lewis saw that L.V. was also experiencing sleep disturbances, "some fears[,]" inappropriate masturbation, and sexually acting out. The standard of review for admission of this testimony is abuse of discretion since defense counsel objected on the grounds that Ms. Lewis had not examined L.V.
Stancil instructs, "an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms orcharacteristics consistent therewith." Stancil, 355 N.C. at 267, 559 S.E.2d at 789. "Our Supreme Court has stated that `an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, if such information is inherently reliable even though it is not independently admissible into evidence.'" State v. McCall, 162 N.C. App. 64, 72, 589 S.E.2d 896, 901 (2004) (quoting State v. Wade, 296 N.C. 454, 462, 251 S.E.2d 407, 412 (1979)). The fact that "information [is] related to [the witness] by a third party does not affect the admissibility of [the] opinion, but instead goes to the weight of the evidence." Id. Therefore, a physical examination is not required, and the source of the expert's opinion may come from a reliable third party.
Here, the trial court asked, after defense counsel objected, whether Ms. Lewis's testimony was based on review of L.V.'s history, and the prosecution answered "[y]es[.]" The jury was aware that Ms. Lewis had not examined L.V. personally and that her opinion was based solely on prior medical records. The jury was aware that L.V. had no physical signs of abuse. We do not agree with defendant that Ms. Lewis based her opinion on L.V.'s claims of abuse; rather, she based her opinion on L.V.'s documented behavior, such as sleep disturbances and inappropriate masturbation.
In cases involving sexual assaults on a minor, "[a]llowing experts to testify as to the symptoms and characteristics of sexually abused children and to state their opinions that the symptoms exhibited by the victim were consistent with sexual or physical abuse is proper."
. . .
In addition, the expert's testimony "could help the jury understand the behavior patterns of sexually abused children and assist in assessing the credibility of the victim."
Id. at 71, 589 S.E.2d at 900-01 (alteration in original; citations omitted).
Accordingly, we hold the trial court did not abuse its discretion in finding that Ms. Lewis's opinion was admissible.

VII.
Defendant next argues that she is entitled to a new trial because the court erroneously excluded evidence of threats Mr. Vanhoy made in 2001. We review this exclusion of evidence for abuse of discretion. At trial, defendant attempted to testify about these threats and the prosecution's objection to the testimony was sustained. In an offer of proof, defendant read two letters written by Mr. Vanhoy into the record. In the letters, Mr. Vanhoy essentially said he would make life difficult for defendant if she did not cooperate with his custody demands. Defendant claims that these letters supported her theory that Mr. Vanhoy prompted his daughters to lie about the sexual abuse and that he, not defendant, created the conditions seen in the DSS photos of defendant's home. We must find error in the trial court's exclusion of this evidence if we find that defendant was prejudiced such that the outcome of the trial would have been different had the evidence been admitted. N.C. Gen. Stat. § 15A-1443(a) (2007).
These letters were written in 2001, and while they do show the animosity Mr. Vanhoy felt for defendant, the letters are notexculpatory in any way. Letters written approximately three years before Mr. Vanhoy sought emergency custody of the girls are not evidence that he encouraged the girls to fabricate sexual abuse in 2005 and 2006, nor are they evidence that he caused the damage to defendant's house seen in the DSS photos in 2004. The evidence was temporally remote and not relevant to a defense of sexual abuse. We find that the trial court did not abuse its discretion in refusing to admit the evidence at trial.

VIII.
Finally, defendant argues that the remaining convictions of taking indecent liberties with a minor must be vacated because there was insufficient evidence any liberty was taken for the purpose of arousing or gratifying sexual desire.[1] We disagree.
At the close of all the evidence, defense counsel moved to dismiss the indecent liberties charges on the ground that there was insufficient evidence of intent. This motion was denied. "On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." State v. Crawford, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "'[T]he trial court must consider the evidence in the light most favorable to the State and the State is entitled to everyreasonable inference to be drawn from that evidence.'" Id. at 73, 472 S.E.2d at 926 (citation omitted).
The applicable statute states:
(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.
N.C. Gen. Stat. § 14-202.1(a)(1), (2) (2007).
Whether defendant was attempting to gratify sexual desire "' may be inferred from the evidence of the defendant's actions.'"State v. Quarg, 334 N.C. 92, 100, 431 S.E.2d 1, 5 (1993) (citation omitted). While the evidence tended to show that defendant did not ask L.V. or C.V. to touch her inappropriately, nor that she touched herself while committing the sex acts against the girls, the jury could infer that defendant obtained sexual gratification by secretly placing markers in their genitals and at times binding their hands or placing a pillow over their heads. See State v. Bruce, 90 N.C. App. 547, 551, 369 S.E.2d 95, 98 (1998) (this Court found that the jury could infer that defendant rubbed the minor's breasts "for the purpose of arousing or gratifying his sexual desire"); State v. Rogers, 109 N.C. App. 491, 505-506, 428 S.E.2d220, 228-29 (1993) (evidence was sufficient of defendant's intent when defendant touched the victim's chest and vaginal area while alone in a bathroom). We find no error in the trial court's denial of defendant's motion to dismiss with regard to these charges because the jury could find, based on the evidence, that defendant tied up her daughters, and placed markers and potentially other foreign objects into their genitals for the purpose of arousing or gratifying sexual desire.

Conclusion
In sum, we hold that the evidence presented in this case was not erroneously admitted by the trial court, nor were the letters by Mr. Vanhoy erroneously excluded. The cross-examination of defendant did not amount to plain error, and the trial court did not err in failing to intervene ex mero motu during the State's closing argument. While we vacate the convictions for indictments 05CRS52890 through 05CRS52897 as these charges were dismissed before trial, we hold there was sufficient evidence to support the remaining convictions of taking indecent liberties with a minor.
No error in part, vacated in part, remanded for resentencing.
Judges ELMORE and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] 05CRS005907 through 05CRS005910; 07CRS00563 through 07CRS00565.