STATE OF NORTH CAROLINA v. ERIC MARSHALL HAMMETT

No. 83A06

(Filed 15 December 2006)

1. **Evidence— expert testimony—sexual abuse—victim's history combined with physical findings**

The trial court did not err by admitting a medical expert's opinion that a child had been sexually abused based on the child's statements and physical evidence found during an examination, because: (1) the expert's opinion never implicated the defendant as the perpetrator, and thus, the opinion that the trauma was consistent with the victim's story was not the same as an opinion that the witness was telling the truth; (2) the interlocking factors of the victim's history combined with the physical findings constituted a sufficient basis for the expert opinion that sexual abuse had occurred; and (3) in light of the expert's specialized knowledge in pediatrics and child physical and sexual abuse, her opinion testimony assisted the jury in understanding the evidence presented.

2. **Evidence— expert opinion—belief of sexual abuse absent physical evidence—plain error analysis**

The trial court did not commit plain error by admitting an expert's opinion that she would believe the child and diagnose

abuse even in the absence of physical evidence, because while the expert's statements vouching for the minor child were improper, the jury would not have acquitted defendant if the challenged statements had been excluded when: (1) the case at bar did not rest solely on the victim's credibility; and (2) in addition to the minor child's consistent statements and testimony that defendant had abused her sexually, the jury was able to consider properly admitted evidence that the child exhibited physical signs of repeated sexual abuse, defendant's admissions of bizarre bathing habits with the child, and defendant's thoroughly impeached denials that his showers with the child had any sexual aspect.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 175 N.C. App. 597, 625 S.E.2d 168 (2006), reversing a judgment entered 11 February 2004 by Judge Steve A. Balog in Superior Court, Cabarrus County and granting defendant a new trial. Heard in the Supreme Court 13 September 2006.

*Roy Cooper, Attorney General, by Kelly L. Sandling, Assistant Attorney General, for the State-appellant.*

*Mark Montgomery for defendant-appellee.*

EDMUNDS, Justice.

In this case, we consider whether the trial court committed error in admitting a medical expert's opinion that a child had been sexually abused, based on the child's statements and physical evidence found during an examination. We also consider whether admission of the expert's additional opinion that she would believe the child and diagnose abuse even in the absence of physical evidence constitutes plain error. Because we conclude that admission of the former was proper and admission of the latter did not rise to the level of plain error, we reverse the Court of Appeals decision, vacate its order for a new trial, and remand to that court for consideration of defendant's remaining issues.

On 9 June 2003, defendant was indicted in Cabarrus County for three counts of sexual offense against a thirteen-year-old child, in violation of N.C.G.S. § 14-27.7(a), and seven counts of taking indecent liberties with a child, in violation of N.C.G.S. § 14-202.1(a)(2). In each case, the victim was C.H., who is defendant's daughter. The

offenses were alleged to have occurred between late January and early April 2003.

Defendant was tried at the 9 February 2004 criminal session of Cabarrus County Superior Court. The State's evidence included testimony from C.H.; E.O., C.H.'s friend to whom she first described the abuse; Sherry Cook, the nurse at the Children's Advocacy Center where C.H. was taken for evaluation; Rosalina Conroy, M.D. (Dr. Conroy), the pediatrician who examined C.H.; and Detective Larissa Cook, the arresting officer. C.H. testified that, before going to live with defendant, she had been sexually abused by her mother's former boyfriend. However, this early abuse had not involved any penetration of her vagina. C.H. later went to live with defendant. She testified that defendant had committed various sexual acts on her while she lived with him between January and April 2003, including, *inter alia*, fondling her breasts, putting his tongue into her vagina, shaving her pubic hair, having her wash his genitals, and twice penetrating her vagina with his fingers while taking a shower with her. Defendant testified in his own defense and denied most of C.H.'s allegations. However, he acknowledged that he had showered with C.H. on two occasions and washed her "private areas" while his hand was covered by a wash cloth.

On the first day of trial, Dr. Conroy was accepted by the court as an expert in pediatric medicine specializing in child physical and sexual abuse. She testified that she met C.H. on 28 April 2003. Dr. Conroy obtained a medical history from C.H., then conducted a physical examination. During the examination, she observed a notch in the six o'clock position of C.H.'s hymenal ring. She stated that sexual abuse is "one of the only things" that will cause that kind of injury at that location. In addition, Dr. Conroy discovered an irregular scar on C.H.'s posterior fourchette, at the bottom of the hymenal ring. She explained that only ten percent of the sexually abused children she sees show physical signs of the abuse. Dr. Conroy testified that it was her opinion that these physical findings resulted from repeated abuse and were caused by penetration of C.H.'s vagina with a hard object.

Over defendant's objection, the trial court allowed the State to recall Dr. Conroy as a witness the following day to clarify her medical findings. Dr. Conroy repeated her testimony that, based on the physical findings, she believed C.H.'s vagina had been penetrated and that it happened more than once. When asked if C.H.'s account was "consistent with the two injuries" that Dr. Conroy had found and whether C.H.'s case was "consistent of [sic] sexual abuse," she answered affir-

matively. Dr. Conroy then added that she "based the bulk of [her] conclusion on [C.H.'s] history" and "even if there were absolutely no physical findings, [her] conclusion would still be the same, based on [C.H.'s] history . . . [and] plenty of details in that history . . . that she has been sexually abused."

The jury found defendant guilty on all counts and defendant appealed his conviction to the Court of Appeals. On 7 February 2006, a divided panel of that court held that the trial court committed plain error in admitting portions of Dr. Conroy's second day of testimony. Accordingly, the Court of Appeals ordered that defendant receive a new trial on all counts. *State v. Hammett*, 175 N.C. App. 597, 625 S.E.2d 168 (2006). In so ruling, the Court of Appeals did not address other issues raised by defendant on appeal. The dissent argued that the trial court had not erred in admitting the statements. The State appealed to this Court based on the dissent.

[1] Before this Court, defendant does not challenge Dr. Conroy's physical findings but argues that all of her opinion testimony was improperly admitted. In response, the State argues that Dr. Conroy's testimony was admissible or, in the alternative, that its admission did not constitute plain error.

As to Dr. Conroy's testimony on the first day of trial, she stated without objection that she reached her conclusion that C.H. had been abused on the twin bases of C.H.'s history and the physical symptoms consistent with that history. The facts of the case control our determination of whether these two factors are sufficient to support an expert opinion that abuse has occurred. For example, in *State v. Trent*, the defendant was convicted of first-degree rape and taking indecent liberties with a minor. 320 N.C. 610, 359 S.E.2d 463 (1987). The victim told the examining pediatrician that her father had sexual intercourse with her. *Id.* at 613, 359 S.E.2d at 465. The pediatrician testified that a pelvic examination of the victim revealed that her hymen was not intact, but no lesions, tears, abrasions, bleeding, or other abnormal conditions had been found. *Id.* The expert acknowledged that the condition of the hymen would justify a conclusion that the victim had been sexually active, but would not by itself support a diagnosis of abuse. *Id.* at 614, 359 S.E.2d at 465-66. Noting that the examination had been conducted four years after the alleged abuse, we concluded that the State had failed to establish a sufficient basis for the pediatrician's expert opinion that the victim had been abused. *Id.* at 614-15, 359 S.E.2d at 465-66.

**STATE v. HAMMETT**

[361 N.C. 92 (2006)]

In *State v. Aguallo,* we held that an expert's opinion that the victim in a sexual abuse case was "believable" was erroneously admitted when the examination finding physical evidence of penetration had been conducted more than six months after the alleged offense, the victim's credibility was questioned, and the defendant denied any physical or sexual contact with the victim. 318 N.C. 590, 593, 599, 350 S.E.2d 76, 78, 82 (1986). On retrial, the expert testified that a physical examination revealed a "lacerational cut" in the victim's hymen. *State v. Aguallo,* 322 N.C. 818, 822, 370 S.E.2d 676, 678 (1988). The expert then confirmed this physical finding was consistent with the victim's pre-examination statement to the expert that the defendant had vaginal intercourse with her. *Id.* Because the expert's opinion never implicated the defendant as the perpetrator, we held the opinion that the trauma was consistent with the victim's story was not the same as an opinion that the witness was telling the truth. *Id.* at 822-23, 370 S.E.2d at 678. Accordingly, the opinion was admissible. *Id.*

In the case at bar, Dr. Conroy obtained C.H.'s history, then conducted a physical examination shortly after the last alleged act of abuse. Dr. Conroy described the results of the examination as evidence of sexual abuse:

> [Dr. Conroy] Sexual abuse is generally the—one of the only things that will cause [a hymenal notch], especially in the position where she's—where that is, which is at the six o'clock position, and that's the position that we spent a lot of time looking at because if there is penetrating trauma, that's where we're going to see it.
>
> Q So you see a notch and then you also see it at a specific point that meant something to you?
>
> A Right, exactly.

Thus, Dr. Conroy testified that her findings were consistent with abuse, though not necessarily by defendant.

Under these facts, we conclude that the interlocking factors of the victim's history combined with the physical findings constituted a sufficient basis for the expert opinion that sexual abuse had occurred. *Cf. State v. Stancil,* 355 N.C. 266 *passim,* 559 S.E.2d 788 *passim* (2002) (per curiam) (finding an inadequate foundation for expert opinion that sexual assault occurred when opinion based only upon an interview with complaining witness unsupported by any physical evidence of abuse despite two physical examinations and a

series of tests on the alleged victim). In light of Dr. Conroy's specialized knowledge in pediatrics and child physical and sexual abuse, her opinion testimony assisted the jury in understanding the evidence presented. N.C.G.S. § 8C-1, Rule 702(a) (2005) ("If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion."). For the same reason, Dr. Conroy's similar opinion on the second day of trial that C.H.'s symptoms were consistent with sexual abuse was properly admitted. *See Stancil*, 355 N.C. at 266-67, 559 S.E.2d at 789.

[2] The more difficult issue before us is whether the trial court committed error in admitting Dr. Conroy's subsequent expert testimony that, based on C.H.'s statements, she would conclude that C.H. had been abused even in the absence of physical symptoms and, if so, whether the error was plain error. Defendant argues the statement reveals that Dr. Conroy reached her opinion because she believed C.H.'s statements and therefore, her testimony was a "direct comment on [C.H.'s] veracity." The State responds that Dr. Conroy's comment was a hypothetical scenario inapplicable to this case.

"In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *Stancil*, 355 N.C. at 266-67, 559 S.E.2d at 789. *See also State v. Grover*, 142 N.C. App. 411, 417-19, 543 S.E.2d 179, 182-84 (holding the experts' opinion testimony lacked a proper foundation when there was no physical evidence of sexual abuse and the experts admitted that their conclusions were based solely on the children's statements that they had been abused), *aff'd per curiam*, 354 N.C. 354, 553 S.E.2d 679 (2001). Accordingly, Dr. Conroy improperly vouched for C.H.'s credibility when she added to her previous admissible testimony the remark that she would reach the same conclusion based on C.H.'s history alone and that the physical evidence was not a necessary basis for her conclusions. Admission of this part of Dr. Conroy's testimony was error.

We next consider whether admission of this evidence constituted plain error. Defendant raised only a general objection to the recalling of Dr. Conroy on the second day of trial. Defendant did not object specifically to Dr. Conroy's testimony regarding C.H.'s credibility, nor did defendant later move to strike this testimony. *See* N.C.G.S.

§ 8C-1, Rule 103(a)(1) (2005) (stating that when asserting error regarding a ruling admitting evidence, "[n]o particular form is required in order to preserve the right to assert the alleged error upon appeal if the motion or objection *clearly presented the alleged error* to the trial court" (emphasis added)); N.C. R. App. P. 10(b) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, *stating the specific grounds* for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion." (emphasis added)). Accordingly, defendant's general objection was insufficient to preserve this issue for appellate review.

When such an issue is not preserved in a criminal case, we apply plain error review. *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) (citations omitted). We find plain error "only in exceptional cases where, 'after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." ' Thus, the appellate court must study the whole record to determine if the error had such an impact on the guilt determination, therefore constituting plain error." *State v. Davis*, 349 N.C. 1, 29, 506 S.E.2d 455, 470 (1998) (citations omitted), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). Accordingly, we must determine whether the jury would probably have reached a different verdict if this testimony had not been admitted. *See State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987) (explaining that "plain error" is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached"), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

Defendant contends that the State's case was not overwhelming and was "totally dependent" on the relative believability of C.H. and defendant. Therefore, defendant argues, Dr. Conroy's impermissible vouching for C.H.'s credibility was a fundamental flaw in the proceedings comparable to other cases in which the Court of Appeals has ordered a new trial under plain error review. However, in all but one of the cases cited by defendant in support of this argument, admission of the expert's testimony was held to be plain error because the opinion that sexual abuse occurred was formed in the absence of any physical findings and the expert relied exclusively

upon the victim's credibility. *See State v. Delsanto*, 172 N.C. App. 42, 46-49, 615 S.E.2d 870, 873-75 (2005); *State v. Ewell*, 168 N.C. App. 98, 105-06, 606 S.E.2d 914, 919-20, *disc. rev. denied*, 359 N.C. 412, 612 S.E.2d 326 (2005); *State v. Bush*, 164 N.C. App. 254, 259-60, 595 S.E.2d 715, 718-19 (2004); *State v. O'Connor*, 150 N.C. App. 710, 712, 564 S.E.2d 296, 297 (2002). In the single remaining case cited by defendant, the only physical evidence was abrasions on the victim's introitus that were not diagnostic of or specific to sexual abuse. *State v. Couser*, 163 N.C. App. 727, 729-32, 594 S.E.2d 420, 422-24 (2004).

In contrast, the case at bar did not rest solely on the victim's credibility. Dr. Conroy appropriately testified that she could tell "from [C.H.'s] physical findings . . . that [C.H.] has been penetrated and . . . it has happened more than once." As the Court of Appeals majority correctly noted, "That C.H. was likely 'repeatedly sexually abused' by someone was not seriously challenged at trial." *Hammett*, 175 N.C. App. at ——, 625 S.E.2d at 173. In addition, while defendant denied abusing C.H., he corroborated her testimony that he had taken showers with her and admitted washing her "private areas" on two occasions. Defendant's stated reason for entering naked into the shower with his thirteen-year-old daughter was that "[s]he had bad personal hygiene." When defendant denied instructing C.H. to wash him in the shower, he was impeached with a prior statement in which he admitted to having C.H. "wash [his] arms and legs." Defendant then acknowledged instructing C.H. to wash "the upper part of my chest." When asked to explain to the jury how having C.H. wash him would help her personal hygiene, defendant conceded, "I have no explanation of that."

Therefore, in addition to C.H.'s consistent statements and testimony that defendant had abused her sexually, the jury was able to consider properly admitted evidence that C.H. exhibited physical signs of repeated sexual abuse, defendant's admissions of bizarre bathing habits with C.H., and defendant's thoroughly impeached denials that his showers with C.H. had any sexual aspect. Thus, while Dr. Conroy's statements vouching for C.H. were improper, we believe the jury would not have acquitted defendant if the challenged statements had been excluded.

We reverse the decision of the Court of Appeals and vacate its order for a new trial. We remand this case to the Court of Appeals for consideration of the remaining issues raised by defendant.

VACATED; REVERSED AND REMANDED.