IN THE SUPREME COURT OF NORTH CAROLINA

No. 484A19

Filed 18 December 2020

STATE OF NORTH CAROLINA

v.

DAVID WILLIAM WARDEN II

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 836 S.E.2d 880 (N.C. Ct. App. 2019), reversing a judgment entered on 12 September 2018 by Judge Gregory R. Hayes in Superior Court, Rockingham County. Heard in the Supreme Court on 17 June 2020.

*Joshua H. Stein, Attorney General, by Margaret A. Force, Assistant Attorney General, for the State-appellant.*

*Mark Montgomery for defendant-appellee.*

EARLS, Justice.

In this case, we consider whether the Court of Appeals correctly held that the trial court committed plain error when it admitted improper testimony by a Department of Social Services (DSS) Child Protective Services Investigator who, after explaining that DSS will "substantiate a case" if the agency "believe[s] allegations [of sexual abuse] to be true," testified that DSS had "substantiated sexual abuse naming [defendant] as the perpetrator." The Court of Appeals held that because the DSS investigator's testimony "improperly bolstered or vouched for the victim's credibility," and because "the credibility of the complainant was the central, if not the only, issue

to be decided by the jury," the trial court committed plain error requiring a new trial. *State v. Warden*, 836 S.E.2d 880, 885 (N.C. Ct. App. 2019). Judge Young dissented. While agreeing with the majority that the DSS investigator's testimony was improper, Judge Young concluded that defendant had failed to prove that, absent the improper vouching testimony, the jury likely would have reached a different result. *Warden*, 836 S.E.2d at 885 (Young, J., dissenting).

We agree with the majority of the Court of Appeals and hold today that the trial court committed plain error by allowing the State to introduce the DSS investigator's inadmissible vouching testimony. Consistent with the precedent this Court established in *State v. Towe*, 366 N.C. 56, 732 S.E.2d 564 (2012), we hold that the trial court commits a fundamental error when it allows testimony which vouches for the complainant's credibility in a case where the verdict entirely depends upon the jurors' comparative assessment of the complainant's and the defendant's credibility. Accordingly, we affirm the decision of the Court of Appeals.

## Background

Defendant is the father of two children, Virginia[1] and her younger brother. Defendant separated from Virginia's mother in 2011. Around Father's Day in 2017, fifteen-year-old Virginia had a conversation with her paternal grandfather regarding their plans for the upcoming holiday. Virginia told her grandfather that she did not

---

[1] We refer to the juvenile by the pseudonym used at the Court of Appeals.

want to spend the holiday with defendant. Her grandfather became angry. In frustration, he shouted "It's not like he molested y'all or anything." Virginia became quiet, then told her grandfather she loved him, and hung up the phone. Later that day, Virginia told her mother that, on one occasion when she was nine and two occasions when she was twelve, defendant sexually abused her. Virginia alleged that each assault followed a similar pattern. Defendant would summon Virginia to his bedroom, force Virginia to perform oral sex on him, and then pray for forgiveness after the assault was over. During each of the assaults, Virginia's younger brother was home but not present in the bedroom. Besides Virginia and defendant, there were no other direct witnesses to any of these incidents. Virginia testified that she did not report the assaults at the time they occurred because defendant "told me not to tell anybody" and she "was terrified of my dad."

The day after she first disclosed the assaults to her mother, Virginia's mother took her to the Rockingham County Sheriff's Office to file a report. In a statement she provided on 14 June 2017, Virginia described the three incidents of sexual abuse. After an investigation, defendant was indicted on 13 October 2018 on the charges of sexual offense with a child by an adult, child abuse by a sexual act, and indecent liberties with a child.

At trial, the State called nine witnesses. In addition to Virginia, the jury heard testimony from a Detective and a Deputy Sheriff with the Rockingham County Sheriff's Office who were involved in investigating Virginia's report, Virginia's

mother, Virginia's maternal grandmother, Virginia's paternal grandfather, the DSS Child Protective Services Investigator assigned to Virginia's case, and the director of a child advocacy non-profit who conducted a forensic interview of Virginia. The jury also heard testimony from Virginia's aunt, defendant's sister, who testified that when she was around the age at which Virginia was allegedly abused by defendant, defendant sexually assaulted her in a manner that shared many similarities with Virginia's account of defendant's conduct. This testimony was admitted pursuant to N.C.G.S. § 8C–1, Rule 404(b) (2009). Defendant was the only witness to testify on his behalf. The jury found defendant guilty on all three charges. He was sentenced to consecutive sentences of 300 to 369 months for the sexual offense with a child by an adult, 29 to 44 months for the child abuse by a sexual act, and 19 to 32 months for the indecent liberties with a child.

## Standard of Review

Because defendant failed to object to the DSS investigator's testimony at trial, we review his challenge on appeal for plain error. *State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006). "[T]o establish plain error defendant must show that a fundamental error occurred at his trial and that the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Towe*, 366 N.C. at 62, 732 S.E.2d at 568 (quoting *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012)). A fundamental error is one "that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334

(cleaned up). In determining whether the admission of improper testimony had a probable impact on the jury's verdict, we "examine the entire record" of the trial proceedings. *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983).

## Analysis

There is no disputing, and the State concedes, that the trial court erred in allowing the DSS Child Protective Services Investigator's testimony that

> part of our role is to determine whether or not we believe allegations to be true or not true. If we believe those allegations to be true, we will substantiate a case. If we believe them to be not true or we don't have enough evidence to suggest that they are true, we would un-substantiate a case. . . . We substantiated sexual abuse naming [defendant] as the perpetrator.

"In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *State v. Stancil*, 355 N.C. 266, 266–67, 559 S.E.2d 788, 789 (2002) (per curiam). This rule permits the introduction of expert testimony only when the testimony is "based on the special expertise of the expert," who "because of his [or her] expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson*, 295 N.C. 559, 568–69, 247 S.E.2d 905, 911 (1978); *see also State v. McGrady*, 368 N.C. 880, 889, 787 S.E.2d 1, 9 (2016). Thus, an expert witness's "definitive diagnosis of sexual abuse" is inadmissible unless it is based upon "supporting physical evidence of the abuse." *State v. Chandler*, 364

N.C. 313, 319, 697 S.E.2d 327, 331 (2010); *see also State v. Trent*, 320 N.C. 610, 614–15, 359 S.E.2d 463, 465–66 (1987). Because there was no physical evidence that Virginia was sexually abused, it was error to permit the DSS investigator to testify that sexual abuse had *in fact* occurred. In addition, it is typically improper for a party to "s[eek] to have the witnesses vouch for the veracity of another witness."[2] *State v. Robinson*, 355 N.C. 320, 334, 561 S.E.2d 245, 255 (2002); *see also State v. Gobal, 186 N.C. App. 308, 318, 651 S.E.2d 279, 286 (2007), aff'd, 362 N.C. 342, 661 S.E.2d 732 (2008)* ("[O]ur Supreme Court has determined that when one witness vouch[es] for the veracity of another witness, such testimony is an opinion which is not helpful to the jury's determination of a fact in issue and is therefore excluded." (alterations in original) (cleaned up)).

The only question for this Court to address is whether defendant has met his "burden of showing that [the] error rose to the level of plain error." *State v. Melvin*, 364 N.C. 589, 594, 707 S.E.2d 629, 633 (2010). Based on our precedents, we conclude that he has. In considering this question, the Court is bound by our prior cases. This Court considered the same legal question under similar factual circumstances in *Towe*. In that case, we held that the trial court committed plain error when it allowed the State to present inadmissible vouching testimony because, in the absence of

---

[2] The ultimate analysis of the appropriateness of a witness's opinion testimony regarding the credibility of another witness differs depending on whether the witness is a lay or expert witness. *Compare* N.C.G.S. § 8C-1, Rule 701 (2019) (providing the rule that applies to lay witness testimony) *with* N.C.G.S. § 8C-1, Rule 702 (2019) (providing the rule that applies to expert witness testimony).

physical evidence of abuse, the case "turned on the credibility of the victim, who provided the only direct evidence against defendant." 366 N.C. at 63, 732 S.E.2d at 568. The Court reached that conclusion notwithstanding the fact that the State had also presented evidence corroborating the complainant's testimony which supported the jury's conclusion that the defendant had committed the alleged criminal acts. *Id.*

The present case shares a core, determinative similarity with *Towe*. In both this case and in *Towe*, the "victim displayed no physical symptoms diagnostic of sexual abuse," *id.* at 62, 732 S.E.2d at 568, and the jury's decision to find the complainant more credible than the defendant clearly formed the basis of its ultimate verdict, *id.* at 62–64, 732 S.E.2d at 568–69. As the prosecutor emphasized at trial in this case, a guilty verdict necessarily followed from the jury's determination that Virginia was credible and defendant was not:

> What this case comes down to is whether or not you believe [Virginia]. If you believe [Virginia], there's no reasonable doubt. It really doesn't matter if you fully believe [Virginia's mother], or if you fully believe [the DSS investigator], or if you fully believe the Defendant's father. Those are extra. Those are corroborating evidence. What matters is if you believe [Virginia]. If you believe what she says, then it happened. . . . Tell her you believe her. Tell her not to be afraid. Tell her not to be ashamed. Tell her that this Defendant is guilty of exactly what he did to her.

By the prosecutor's logic, the converse was also true. If the jury determined that defendant was more credible than the complainant, then the jury would have been

overwhelmingly likely to acquit. Thus, "the case against defendant revolved around the victim's credibility." *Towe*, 366 N.C. at 61, 732 S.E.2d at 567.

The State attempts to evade *Towe* by pointing to other evidence presented to the jury in this case which, it contends, independently provided a basis for the jury's decision to find defendant guilty. But the State also presented similar evidence in *Towe*, which did not detract from the Court's holding that the trial court committed plain error. To be sure, other evidence presented in this case served to corroborate the victim's testimony. However, there was no other direct evidence of the abuse.[3] In *Towe*, as in this case, the State presented testimony from close family members "describing the behavior of the victim" around the time of the alleged assaults. *Id.* at 63, 732 S.E.2d at 568. In *Towe*, as in this case, the State offered testimony from the victim's aunt, admitted under N.C.G.S. § 8C–1, Rule 404(b), "describing a similar sexual assault on her by defendant," *Id.* Therefore, under these circumstances, the impermissible vouching testimony "stilled any doubts the jury might have had about the victim's credibility or defendant's culpability, and thus had a probable impact on the jury's finding that defendant is guilty." *Id.* at 64, 732 S.E.2d at 569. By contrast, in cases such as *Hammett* where this Court has held that impermissible vouching

---

[3] The dissent contends that even if there is no direct evidence of the assault, "the statement about 'substantiation' was likely superfluous." We do not agree that, in the absence of any direct evidence of an alleged assault, testimony from a professional investigator employed by a county social services agency to investigate allegations of child sexual abuse is "superfluous" to the jury's ultimate determination of the complainant's credibility and defendant's guilt.

testimony did not rise to the level of plain error, it was because the jury's verdict "did not rest solely on the victim's credibility." 361 N.C. at 99, 637 S.E.2d at 523. Instead, the State also presented evidence regarding the victim's physical symptoms of abuse, as well as the defendant's admission that he had previously engaged in conduct of a sexual nature with the victim. *Id.*

Although there are some factual distinctions between this case and *Towe*, these factual distinctions do not alter our legal analysis. Our necessary review of the entire record convinces us that the State presented no evidence at trial supplying an alternative basis for the jury's conclusion that defendant was guilty besides the jury's determination that the complainant was more credible than defendant. Rather, the evidence the State presented at trial was primarily aimed at persuading the jury to find the complainant's allegations more credible than defendant's denials. For example, testimony from Virginia's maternal grandmother that her behavior changed around the time of the alleged abuse, and testimony from Virginia's paternal grandfather that "all [defendant has] done his whole life is lie and try to cheat people," provided jurors with evidence suggesting that Virginia was telling the truth and defendant was lying, not evidence supporting an independent conclusion that the alleged sexual assaults did or did not occur. Similarly, while jurors were free to draw inferences from testimony alleging that defendant encouraged Virginia to shave her legs at a young age, this evidence concerned an incident that was not inherently sexual in nature, and the State did not otherwise thoroughly impeach defendant's

denials that his conduct had any sexual aspect. *Cf. Hammett*, 361 N.C. at 99, 637 S.E.2d at 523. Again, this is evidence that might lead a jury to conclude that the complainant was more credible than defendant, not independent proof that the alleged assaults occurred. Similarly, Virginia's consistent testimony throughout trial and the forensic examiner's testimony that Virginia exhibited behaviors indicating past abuse may have given the jury reason to believe Virginia's allegations, but did not constitute evidence independent from the jury's assessment of the complainant's and defendant's credibility. *Id.* (holding that admission of impermissible vouching testimony was not plain error because "*in addition to* [the victim's] consistent statements and testimony that defendant had abused her sexually, the jury was able to consider properly admitted evidence that [the victim] exhibited physical signs of repeated sexual abuse") (emphasis added). Accordingly, we hold that the admission of the DSS investigator's improper vouching testimony was, in the absence of "overwhelming evidence" directly proving defendant's guilt at trial, plain error. *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789 (per curiam).

Nothing in this decision dispossesses the jury of its authority to find a defendant guilty of sexual abuse in the absence of physical evidence, based entirely on the jurors' determination that a complainant is more credible than a defendant. Nor does our decision express any opinion about the probative value of the complainant's testimony in this case or in any case. Rather, our decision reflects, and helps preserve, the jury's fundamental "responsibility at trial" in our adversarial

system to "find the ultimate facts beyond a reasonable doubt." *State v. White*, 300 N.C. 494, 503, 268 S.E.2d 481, 487 (1980) (quoting *Cty. Court of Ulster Cty., N.Y. v. Allen*, 442 U.S. 140, 156 (1979)). Of course, the State is entitled to submit to the jury any admissible evidence that it thinks will help convince jurors to believe a complainant and disbelieve a defendant. But concern for the fairness and integrity of criminal proceedings requires trial courts to exclude testimony which purports to answer an essential factual question properly reserved for the jury. When the trial court permits such testimony to be admitted, in a case where the jury's verdict is contingent upon its resolution of that essential factual question, then our precedents establish that the jury's verdict must be overturned.

## Conclusion

Absent evidence supporting the jury's guilty verdict on a basis other than the jury's relative assessment of the complainant's and defendant's credibility, we do not believe that the outcome at trial would probably have been the same if the DSS investigator's inadmissible vouching testimony had been excluded. Accordingly, we hold that defendant has met his burden of showing that the trial court committed plain error. We affirm the decision of the Court of Appeals.

AFFIRMED.

Justice NEWBY dissenting.

When a defendant alleges on appeal that an error occurred at trial, but failed to properly object, that defendant must demonstrate that the outcome of the trial probably would have been different without the error. Holding that such prejudicial error occurred in this case, the majority seizes on one word uttered by one witness and decides that the State's entire case, which was supported by abundant evidence, is compromised. I respectfully dissent.

At trial, Virginia[1] testified at length that defendant, her father, forced her to perform oral sex on him multiple times. She explained that after these assaults, defendant would go to another room to pray, apologize to God, and promise never to do it again. At the time, defendant instructed Virginia not to tell anyone about what happened. Law enforcement, Virginia's mother, and two grandparents testified at trial for the State as well. Virginia's maternal grandmother testified that Virginia's behavior significantly changed around the time of the first assault. Virginia's mother and paternal grandfather testified that even though Virginia did not get along with her step-mother, she often went to work with her instead of remaining at home alone with her father.

Defendant's sister testified that multiple times when she was between the ages of seven and twelve, defendant forced her to perform various sexual acts with him.

---

[1] A pseudonym is used to protect the juvenile's identity.

After each assault, just like with Virginia, he would express remorse and pray to God asking for forgiveness. She testified that she kept this a secret until the age of fourteen because defendant told her she would get in trouble and be taken from her mother if she brought it up. The Department of Social Services investigator testified that during her interviews Virginia's paternal grandfather, maternal grandmother, and mother's fiancé all indicated that they believed Virginia. A jury convicted defendant of sexual offense with a child by an adult, child abuse by sexual act, and indecent liberties with a child.

The majority decides that all of this evidence is not strong enough to support the guilty verdicts. It discards the verdicts because the DSS investigator also said that DSS "substantiated" Virginia's allegations.[2] The majority cites *State v. Towe*, 366 N.C. 56, 732 S.E.2d 564 (2012) to frame the question around whether the case turns on the victim's credibility. To the majority, the vouching testimony by DSS probably impacted the trial outcome because, in its view, this case turns on Virginia's credibility. It therefore holds that without the testimony that DSS substantiated Virginia's claims, the jury likely would not have believed Virginia and would have believed defendant instead.

The majority confuses evidence that is simply relevant with evidence that is essential to the outcome of the case. Of course, a witness stating that Virginia's claims

---

[2] All parties concede that this testimony was inappropriate. The question is whether it is probable that the admission of the testimony impacted the jury's finding that the defendant was guilty. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

were "substantiated" could enhance the credibility of her allegations. But that does not mean her allegations would be unbelievable if they lacked the support of that one particular statement. Indeed, that notion is quite far from the truth in this case, where the statement about "substantiation" was likely superfluous. In context, the jury would have understood that statement simply to mean that DSS pursued the allegations, which was already obvious considering that a DSS investigator testified against defendant. Moreover, the DSS investigator explained that substantiation is for social work purposes, not trial purposes. She noted that in some cases DSS will substantiate but the government will not prosecute, or vice versa. With these careful qualifications, and the substantial additional evidence of Virginia's credibility and defendant's guilt, the majority's position that the word "substantiate" would have likely changed the outcome of the trial is hard to believe.

In addition to the explanation the jury heard about the term "substantiate," the jury heard extensive testimony from several other witnesses corroborating Virginia's consistent story—testimony of Virginia's behavior change, testimony from an expert witness regarding delayed disclosures, and testimony of defendant's demeanor during his denial of the events. Perhaps most significantly, the jury heard testimony from both Virginia and defendant's sister detailing defendant's similarly idiosyncratic behavior after each victim's sexual assaults. Defendant's modus operandi was well established.

Moreover, the majority misapplies our precedent from *Towe*. In *Towe* the challenged testimony came from an expert to whom multiple witnesses referred, likely leading the jury to place more value on that expert's testimony. 366 N.C. at 58, 732 S.E.2d at 565–66. But here no other witness emphasized the investigator's testimony, and the prosecution paid little attention to it during closing arguments. Further, unlike the victim in *Towe*, whose story was inconsistent, the victim in this case consistently recounted the traumatic events for the entire fifteen months from first disclosure until trial. Finally, unlike in *Towe*, where the defendant chose not to testify, here defendant did take the stand, allowing the jury to directly evaluate his credibility. The expert testimony in *Towe* that the victim was indeed sexually abused was pivotal to the prosecution because the State's evidence was weaker than here and the other witnesses relied on the contested expert testimony. In this case, the DSS investigator's testimony that Virginia's claims were "substantiated" was not nearly so critical. The rigorous plain error standard to which this Court has long adhered has not been met. The convictions should be upheld.

I respectfully dissent.