IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-13

No. 286A20

Filed 11 February 2022

STATE OF NORTH CAROLINA

v.

JAMES CLAYTON CLARK, JR.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the unpublished decision of a divided panel of the Court of Appeals, No. COA 19-634, 2020 WL 1274899 (N.C. Ct. App. Mar. 17, 2020), finding no error in part in a judgment entered on 18 July 2018 by Judge Jeffrey B. Foster Jr. in Superior Court, Pitt County. On 14 August 2020, the Supreme Court allowed, in part, defendant's petition for discretionary review. Heard in the Supreme Court on 19 May 2021.

*Joshua H. Stein, Attorney General, by Lisa B. Finkelstein, Assistant Attorney General, for the State-appellee.*

*Paul F. Herzog for defendant-appellant.*

HUDSON, Justice.

James Clayton Clark, Jr. (defendant) appeals from a divided decision of the Court of Appeals, arguing the majority erred in upholding his conviction for taking indecent liberties with a child on the basis that the trial court erred in allowing the State's expert to testify that the minor child was "sexually abused" in the absence of physical evidence confirming her opinion. Defendant further argues that testimony

by the State's expert identifying defendant as the perpetrator of the charged offense constituted plain error and that the dissenting opinion in the Court of Appeals correctly determined that the record of this case is sufficient to determine that Mr. Clark's trial counsel committed ineffective assistance of counsel. For the reasons stated, we affirm in part and reverse in part the decision of the Court of Appeals, and remand for a new trial.

## I.  Factual and Procedural Background

In the summer of 2015, six-year-old "Jane"[1] started bed-wetting, having nightmares, and withdrawing socially. Around a year later, Jane told her stepmother that defendant, Jane's aunt's boyfriend at the time, called Jane into the bathroom, "grabbed her forcefully by her arm," and "attempted to put her hand inside of his underwear in his pants." The alleged incident occurred in the summer of 2015 while Jane was staying with her aunt.[2] Jane told her stepmother that she was "afraid of [defendant]" because "he had tried to force her to do something that she felt like was wrong."

Jane's stepmother reported the incident to law enforcement the following day, and the Pitt County Sheriff's Office interviewed Jane. The sheriff's office scheduled an appointment for Jane with the TEDI Bear Children's Advocacy Center (CAC) and

---

[1] A pseudonym is used to protect the identity of the child victim.
[2] The charging indictment alleged the date of the offense to be "BETWEEN 06-01-2015 and 8-31-2015."

subsequently recommended she receive trauma-based therapy. In her testimony, Jane's stepmother stated that Jane's behavioral problems "improved greatly" after over one year of therapy, yet there remained "a distance that wasn't there before."

At trial, Jane testified that defendant "called [her] into the bathroom…grabbed [her] hand…tried to make -- make [her] touch his private…was pulling [her] hand to his pants." According to Jane's testimony, she eventually got loose from defendant's grip and returned to playing with her cousins. Defendant was the only adult present at the time of the incident, but Jane could not remember how he reacted after the incident. Jane also testified that she informed her aunt and biological mother about the alleged abuse, but neither took any action. A year later, Jane told her stepmother about the incident.

Andora Hankerson testified about her experience as a forensic interviewer and that she interviewed Jane at CAC on 12 September 2016 about the alleged abuse. Ms. Hankerson testified to the following brief summary of the interview based on the written report from CAC:

> Rapport was established with [Jane] and she was able to engage in the process. [Jane] was able to demonstrate the difference between truth and lie. She promised to discuss true things during her interview. The alleged offender, she stated the alleged offender called [Jane] into the bathroom, grabbed her hand, and tried to make her touch his private part. The incident occurred at her Aunt['s] house.

Ms. Hankerson also testified about her training to recognize whether a child had been

"coached" by a parent or another person and, over defendant's objection, testified that she saw no indications Jane had been "coached" based on the 12 September 2016 interview.

¶ 6 The nurse who evaluated Jane at CAC, Ann Parsons, also testified. Ms. Parsons was tendered as an expert witness in child abuse and forensic evaluation of abused children. Ms. Parsons testified that after performing a physical examination, she determined Jane "was healthy" and "looked normal for [her] age from head to toe." In her evaluations, Ms. Parsons considered "questions about [Jane's] behaviors, how was she doing at school, how's she sleeping, does she seem afraid of anything, how's her appetite, has she been more aggressive," and emphasized that "[a]fter having been dry for a period of time, she was wetting the bed." Ms. Parsons testified that she determined "[Jane] had been sexually abused." She testified the diagnosis was based "predominantly [on] the history of her disclosures to family, law enforcement and Ms. [ ]Hankerson at TEDI Bear, and her behavioral change."

¶ 7 Defendant did not object to Ms. Parson's testimony about her diagnosis of Jane as "sexually abused." Ms. Parsons also testified, again without objection, about her treatment recommendations for Jane, specifically that Jane have (1) "primary care with her regular doctor, mental health evaluation," (2) "an evidence-based trauma-focused treatment program," (3) "no contact with [defendant] during the investigation, and [(4)] any future contact with [defendant] only to address

therapeutic needs as determined by [Jane's] therapist." A report summarizing these recommendations was published to the jury without objection.

¶ 8        At the conclusion of the evidence, the jury found the defendant guilty of taking indecent liberties with a child. Defendant was sentenced to twenty-nine months in prison and required to register as a sex offender for thirty years. Defendant appealed.

¶ 9        In a divided opinion authored by then-Judge Berger, the North Carolina Court of Appeals held that the trial court did not commit plain error by permitting Ms. Parsons to use the word "disclosure" in describing Jane's allegations, by permitting her to testify regarding treatment recommendations that identified defendant, and by permitting her to testify that, in her opinion, Jane had been sexually abused. *State v. Clark*, No. COA 19-634, 2020 WL 1274899, at *2–5 (Mar. 17, 2020) (unpublished). The majority further held the trial court did not commit plain error by allowing Ms. Hankerson to testify that Jane had not been "coached." Finally, the majority dismissed defendant's ineffective assistance of counsel claim without prejudice. *Id.* at *5.

¶ 10        First, the majority found no plain error in the trial court's admission of Ms. Parsons's use of the term "disclosure" in her testimony. *Id.* at *3. The majority reasoned "[t]here is nothing about use of the term 'disclose,' standing alone, that conveys believability or credibility." *Id.* at *3 (citing *State v. Betts*, 267 N.C. App. 272, 281 (2019)). Second, the majority determined that Ms. Parsons's recommendations

identifying defendant "in no way amounted to an assertion that Defendant was, in fact, responsible for Jane's alleged sexual abuse," but merely that Jane "subjectively believes defendant to be her abuser." *Id*. Finally, the majority held it was improper to allow Ms. Parsons's testimony stating "[Jane] had been sexually abused" but concluded defendant failed to establish the error sufficiently prejudiced him so as to constitute plain error. *Id*. at *4. The majority concluded the admission of Ms. Parsons's improper testimony did not result in plain error because "the State presented substantial evidence from which the jury could find Defendant guilty,"[3] and the jury had ample opportunity to assess Jane's credibility. *Id*.

¶ 11        The majority also addressed defendant's argument that the trial court erred in permitting Ms. Hankerson to testify that Jane showed no indication of having been "coached." *Id*. Again, the majority found no abuse in the trial court's discretion, explaining that Ms. Hankerson provided "helpful [testimony] in assisting the trier of fact and did not improperly bolster Jane's testimony." *Id*. at *5.

¶ 12        Finally, the majority declined to address the ineffective assistance of counsel claim on direct appeal, dismissing the claim without prejudice to defendant's right to assert the claim in a subsequent motion for appropriate relief. *Id*.

---

[3] The majority cited to the following evidence: "(1) Jane's testimony at trial; (2) a video-recorded interview with Jane at the CAC; (3) evidence of Jane's lasting behavioral problems after the incident—including bed-wetting, nightmares, and social withdrawal; and (4) the consistency of Jane's accounts of the incident to her family, law enforcement, and medical personnel at the CAC." *Clark*, 2020 WL 1274899 at *4.

¶ 13        Judge Arrowood dissented from the majority's dismissal of defendant's ineffective assistance of counsel claim, arguing the claim could be determined on the face of the record and that, in his view, defendant is entitled to a new trial. *Id.* at *6 (Arrowood, J., dissenting). In dissent, Judge Arrowood asserted that defendant satisfied this standard, citing to his counsel's failure to object to Ms. Parsons's testimony that "[Jane] had been sexually abused" and "her implication of defendant as the perpetrator of the abuse." *Id.* Judge Arrowood further maintained that trial counsel's failure to object prejudiced defendant because Jane was the only direct witness of the alleged abuse and, absent any physical evidence, her credibility was "crucial to the outcome of the case." *Id.* at *7. Accordingly, the dissenting opinion would have held that there was a reasonable probability that but for trial counsel's failure to object to expert testimony that impermissibly bolstered the victim's credibility, there is a reasonable probability there would have been a different result at trial. Thus, in his view, defendant was entitled to a new trial.

¶ 14        Defendant timely appealed as of right on the basis of the dissenting opinion under N.C.G.S. § 7A-30. This Court allowed discretionary review of two further issues pursuant to N.C.G.S. § 7A-31.

## II.    Analysis

¶ 15        Defendant argues three issues on appeal: (1) testimony by the State's expert, Ann Parsons, that Jane was "sexually abused," with respect to the absence of physical

evidence confirming Parsons's opinion, constituted plain error in violation of *State v. Towe*, 366 N.C. 56 (2012), (2) testimony by the State's expert witness, Ms. Parsons, identifying Jamie Clark as the perpetrator of the charged offense, constituted plain error, and (3) the dissenting opinion correctly determined that the record of this case is sufficient to determine that Mr. Clark's trial counsel provided ineffective assistance of counsel. We agree in part, specifically in issues (1) and (2), and reverse the decision of the Court of Appeals on those issues.

**A. Testimony of the State's expert that Jane was "sexually abused"**

Defendant first argues that testimony by the State's expert, Ms. Parsons, that Jane was "sexually abused," in the absence of physical evidence confirming Parsons's opinion, constituted plain error under this Court's decision in *State v. Towe*, 366 N.C. 56 (2012). When trial counsel fails to object to the admission of evidence, the trial court's admission of the evidence is reviewed for plain error. *State v. Lee*, 348 N.C. 474, 482 (1998) "[T]o establish plain error defendant must show that a fundamental error occurred at his trial and that the error had a probable impact on the jury's finding that the defendant was guilty." *Towe*, 366 N.C. at 62 (cleaned up). We agree and conclude that the Court of Appeals misapplied our decision in *Towe*.

We first consider whether Ms. Parsons's testimony was improper. Rule 702 of the North Carolina Rules of Evidence provides that experts may testify in the form of an opinion when they have "scientific, technical or other specialized knowledge

[which] will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." N.C.G.S. § 8C-1, Rule 702 (2019). However, this Court has repeatedly held that "[i]n a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *Stancil*, 355 N.C. 266, 266–67 2002) (emphasis in original) (cleaned up).

> Moreover, even when physical evidence of abuse existed and was the basis of an expert's opinion, where the expert added that she would have determined a child to be sexually abused on the basis of the child's story alone even had there been no physical evidence, we found this additional testimony inadmissible. However, if a proper foundation has been laid, an expert may testify about the characteristics of sexually abused children and whether an alleged victim exhibits such characteristics.

*Towe*, 366 N.C. at 61–62 (cleaned up).

¶ 18    Here, Ms. Parsons testified that there were no injuries or physical symptoms of sexual abuse. Rather, Ms. Parsons testified that she based her diagnosis of sexual abuse "predominantly [on] the history of [Jane's] disclosures to family, law enforcement and Ms. [ ]Hankerson at TEDI Bear, and her behavioral change." But evidence of the victim's history of disclosures to family, social workers, and others in the absence of physical evidence is precisely the evidentiary basis we held in *Towe* was "insufficient to support an expert opinion that a child was sexually abused." *Id.*

at 62. The Court of Appeals unanimously concluded this testimony was improper vouching and hence its admission by the trial court was improper. We agree.

¶ 19        Nevertheless, the State argues that this Court should hold that Ms. Parsons's expert testimony about the diagnosis of sexual abuse was admissible because it was "based on her examination of the child and based on her expert knowledge concerning abused children in general." The State relies upon *State v. Bailey*, 89 N.C. App. 212 (1988), a decision of the Court of Appeals that is not binding on this Court and that precedes our decision in *Towe* by over twenty years. In *Bailey*, the defendant was convicted of sex offenses against a child, and, on appeal, the defendant argued the trial court erred in admitting the expert testimony of a social worker and a pediatrician who both testified that the victim had been sexually abused, based on the contention that their testimony was impermissible vouching. *Id.* at 219. The Court of Appeals rejected that argument on the basis that "cases in which the disputed testimony concerns the credibility of a witness's accusation of a defendant must be distinguished from cases in which the expert's testimony relates to a diagnosis based on the expert's examination of the witness," citing cases from this Court in which the expert's testimony to diagnoses of assault was admissible where the diagnosis was on the basis of physical evidence. *See id.* at 219 (citing *State v. Smith*, 315 N.C. 76 (1985); *State v. Stanley*, 310 N.C. 353 (1984); *State v. Starnes*, 308 N.C. 720 (1983)). The *Bailey* decision did not indicate whether the expert opinions of

sexual abuse expressed therein were based on physical evidence. Nevertheless, in both the decisions of this Court relied on in *Bailey* and those decided since, this Court has permitted an expert to testify to a diagnosis of sexual abuse only where there has been some physical evidence upon which to base the opinion. *See, e.g., Stancil*, 355 N.C. at 266–67 ("In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion, that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility."); *Towe*, 366 N.C. at 57–58; *State v. Chandler*, 364 N.C. 313, 318 (2010); *State v. Hammett*, 361 N.C. 92, 94 (2006). Accordingly, whether *Bailey* is entirely consistent with these decisions or not, it cannot support the State's position. We hold the trial court erred in permitting Ms. Parsons to testify that she diagnosed Jane as sexually abused on the evidence before us.[4]

¶ 20      We must next consider whether admission of this testimony was plain error.

> To establish plain error, defendant must show that a
> fundamental error occurred at his trial and that the error
> had a probable impact on the jury's finding that the
> defendant was guilty. Moreover, because plain error is to

---

[4] Notably, the State does not argue in its brief that Jane's subsequent behaviors, including bed-wetting, nightmares, and social withdrawal, could form an independent basis for the expert's diagnosis of sexual abuse, either because they are psychological and hence physical evidence, or because behavioral evidence taken alone is sufficient. Even if that argument were made, however, there is no support in our caselaw for the proposition that such evidence is sufficient, absent other physical evidence, to render an expert's testimony admissible and not impermissible vouching for the victim's credibility.

be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Towe*, 366 N.C. at 62 (cleaned up). "Thus, we must consider whether the erroneous admission of expert testimony had the 'prejudicial effect necessary to establish that the error was a fundamental error.' " *Id.* at 62–63 (quoting *State v. Lawrence*, 365 N.C. 506, 519 (2012)).

¶ 21 In *Towe*, the victim testified that the defendant, her father, sexually assaulted her by rubbing her vagina and by penetrating her with his fingers three times and with his penis at least twice. *Id.* at 57. A pediatrician testified that the victim's vagina was red and inflamed, and the victim relayed through her mother that the defendant had been touching her private parts all the time. *Id.* A detective testified that the victim told him that her father had touched her genitals with his fingers and penis and had asked if he could put his penis in her vagina. *Id.* at 58. Although this Court noted that the mother testified to the victim's behavior, and the victim's aunt testified to a similar prior assault on her by the defendant under N.C.G.S. § 8C–1, Rule 404(b), we reasoned that *Towe* "turned on the credibility of the victim, who provided the only direct evidence against defendant." *Id.* at 63. In particular, we noted there were "discrepancies in the record" that impacted the evaluation of the improper expert testimony on the jury's verdict. *Id.* We held that, due to the expert's testimony that "even absent physical symptoms, the victim had been sexually abused, we [were]

satisfied that [the expert]'s testimony stilled any doubts the jury might have had about the victim's credibility or defendant's culpability, and thus had a probable impact on the jury's finding that [the] defendant [was] guilty." *Id.* at 64.

¶ 22    Here, as in *Towe*, the only direct evidence of sexual abuse was the statements of the victim from her testimony at trial and her video-recorded interview, as well as corroborative evidence through testimony regarding her accounts to family, law enforcement, and medical personnel. Accordingly, the evidence in this case "turned on the credibility of the victim." *Id.* at 63.

¶ 23    The Court of Appeals majority held and the State on appeal argues that evidence of changes in Jane's behavior following the incident, namely "bed-wetting, nightmares, and social withdrawal," *Clark*, 2020 WL 1274899 at *4, is substantial evidence that is a sufficient substitute for physical evidence of sexual abuse. But bedwetting, nightmares, and social withdrawal and other behavioral or psychological changes may have causes besides sexual abuse. As one of our sister supreme courts has reasoned, "[m]any of the symptoms considered to be indicators of sexual abuse, such as nightmares, forgetfulness, and overeating, could just as easily be the result of some other problem, or simply may be appearing in the natural course of the children's development." *New Hampshire v. Cressey*, 137 N.H. 402, 408 (1993). While behavioral change such as bedwetting, nightmares, and social withdrawal is relevant circumstantial evidence of sexual abuse, it can have many other causes; therefore, it

cannot serve as substantial evidence that supports a verdict for a sexual offense independent of testimony of the victim or other direct evidence of abuse. In contrast, physical evidence of sexual abuse of a child can be substantial evidence of abuse even independent of testimony alleging abuse. Circumstantial evidence in the form of testimony about changes in a victim's behavior must be coupled with some other direct evidence, either physical evidence or testimony from the victim or another alleging that abuse occurred that causally links the behavior changes to abuse.

¶ 24        In summary, where, as here, the sole direct evidence of sexual abuse is testimony from the victim, the case necessarily "turn[s] on the credibility of the victim," and expert opinion to the effect that the victim was sexually abused based on a combination of the victim's testimony and behaviors of the victim in the absence of "definitive" physical evidence is likely to weigh heavily on the jury's assessment of the victim's credibility. *Towe*, 366 N.C. at 64; *Chandler*, 364 at 318. Thus, admission of the improper testimony here had a probable impact on the jury's finding that defendant was guilty of taking indecent liberties with a child, and we must conclude the error had the "prejudicial effect necessary to establish that the error was a fundamental error." *Lawrence*, 365 N.C. at 519. Accordingly, we hold that permitting Ms. Parsons to testify that Jane was "sexually assaulted" in the absence of definitive physical evidence, irrespective of testimony concerning the victim's behavioral changes, constituted plain error.

**B. The State's expert's opinion identifying defendant as the perpetrator**

Defendant next argues the Court of Appeals erred in holding admission of Ms. Parsons's expert testimony identifying defendant as the perpetrator of the victim's assault while describing her treatment recommendations was not plain error. Again, we agree.

In *State v. Aguallo*, this Court held that an expert opinion by a doctor that the physical trauma to the genitals revealed by physical examination "was consistent with the abuse the child alleged had been inflicted upon her" was admissible. 322 N.C. 818, 822 (1988). In so holding, we distinguished that circumstance from one in which the expert states "that the victim is 'believable' or 'is not lying.' " *Id.* Our reasoning for this distinction was that "[t]he important difference in the two statements is that the latter implicates the accused as the perpetrator of the crime by affirming the victim's account of the facts. The former does not." *Id.*

In *State v. Hammett*, this Court relied on *Aguallo* to hold that a doctor's expert opinion diagnosing the victim with sexual abuse based in part on a physical examination was admissible where the doctor "testified that her findings were consistent with abuse, though not necessarily by defendant," although a subsequent statement by the doctor that she would hold the same opinion without considering the physical examination was held to be improper. 361 N.C. 92, 96–97 (2006). We specifically summarized the rationale in *Aguallo* as follows: "Because the expert's

opinion never implicated the defendant as the perpetrator, we held the opinion that the trauma was consistent with the victim's story was not the same as an opinion that the witness was telling the truth." *Id.* at 96 (citing *Aguallo*, 322 N.C. at 822–23). The Court of Appeals has similarly held that an expert opinion that victims were sexually abused by the defendant in particular was inadmissible because it "did not relate to a diagnosis derived from his expert examination of the prosecuting witnesses in the course of treatment," and, accordingly, "constituted improper opinion testimony as to the credibility of the victims' testimony." *State v. Figured*, 116 N.C. App. 1, 9 (1994). More recently, in *State v. Ryan*, the Court of Appeals held that an expert's testimony expressing the opinion that "there was no evidence of any other perpetrators" other than the defendant, based on the witness's interview with the child, amounted to plain error. 223 N.C. App. 325, 340–41 (2012).

¶ 28        Here, Ms. Parsons not only testified that she diagnosed Jane as "sexually abused" but also testified about medical recommendations for treatment that included as recommendations that Jane have "no contact with [defendant] during the investigation," and have "any future contact with [defendant] only to address therapeutic needs as determined by [Jane's] therapist." Moreover, a written report summarizing these recommendations was published to the jury. While we have held that permitting Ms. Parsons to testify to the diagnosis of sexual abuse in the absence of physical evidence was error, testimony and a written report identifying defendant

as the perpetrator whether explicitly or by implication compounds that error. Under *Aguallo* and its progeny, this testimony is precisely the sort that we have held is impermissible because it "implicates the accused as the perpetrator of the crime by affirming the victim's account of events." 322 N.C. at 822. As in *Figured*, this testimony "constituted improper opinion testimony as to the credibility of the victims' testimony." *Figured*, 116 N.C. App. at 9.

¶ 29 The State argues *Aguallo*, *Hammett*, and *Figured* are inapplicable because the expert here did not expressly identify defendant as the perpetrator. But the distinction between an explicit identification of the defendant as the perpetrator and an implicit one is not a distinction recognized by our caselaw. In both cases, the statement "*implicates* the accused as the perpetrator of the crime" and hence runs afoul of the prohibition against vouching for the victim. *Aguallo*, 322 N.C. at 822 (emphasis added).

¶ 30 The Court of Appeals majority similarly rejected defendant's argument by reasoning that the medical recommendations "in no way amounted to an assertion that Defendant was, in fact, responsible for Jane's alleged sexual abuse," and "[a]t most, this testimony implies that Jane should not have continued contact with Defendant because she subjectively believes Defendant to be her abuser." *Clark*, 2020 WL 1274899 at *3. We believe the Court of Appeals misconstrues the import of this testimony. Even if one implication of the recommendation is that Jane believed

defendant to be her abuser, another reasonable implication is that Ms. Parsons

believed Jane's allegation enough to recommend she not see defendant out of concern

for her health and safety. In *Aguallo*, we held this sort of implication impermissible.

Moreover, since this case turns on the credibility of the victim, even an implicit

statement that the defendant is the one who committed the crime is plain error

necessitating a new trial. *See Ryan*, 223 N.C. App. at 341. Accordingly, we hold the

trial court also committed plain error in permitting Ms. Parsons to testify to the

medical recommendations identifying defendant as the perpetrator and in publishing

the same recommendations to the jury.

## C. Ineffective assistance of counsel

Finally, defendant argues, following Judge Arrowood in his dissent, that the

record of this case is sufficient to determine that Mr. Clark's trial counsel committed

ineffective assistance of counsel by failing to object. Whether a defendant was denied

the effective assistance of counsel is a question of law that is reviewed de novo. *State*

*v. Braswell*, 312 N.C. 553 (1985).

> To successfully assert an ineffective assistance of counsel
> claim, defendant must satisfy a two-prong test. First, he
> must show that counsel's performance fell below an
> objective standard of reasonableness. Second, once
> defendant satisfies the first prong, he must show that the
> error was so serious that a reasonable probability exists
> that the trial result would have been different absent the
> error.

*State v. Blakeney*, 352 N.C. 287, 307–08 (2000) (cleaned up). Although ineffective

assistance of counsel (IAC) claims are generally litigated in a motion for appropriate

relief, we have held admissible that:

> IAC claims brought on direct review will be decided on the
> merits when the cold record reveals that no further
> investigation is required, i.e., claims that may be developed
> and argued without such ancillary procedures as the
> appointment of investigators or an evidentiary hearing.
> This rule is consistent with the general principle that, on
> direct appeal, the reviewing court ordinarily limits its
> review to material included in "the record on appeal and
> the verbatim transcript of proceedings, if one is
> designated."

*State v. Fair*, 354 N.C. 131, 166 (cleaned up) (quoting N.C. R. App. P. 9(a)).

¶ 32        Here, the majority determined that defendant's IAC claim was premature and

dismissed it without prejudice to defendant's ability to file a later motion. *Clark*, 2020

WL 1274899 at *5. Defendant asks this Court to instead adopt Judge Arrowood's

approach in his dissenting opinion, in which he would have held that the face of the

record showed sufficient evidence of ineffective assistance of counsel to decide the

claim. *Id.* at *6 (Arrowood, J., dissenting). After reviewing the record, we conclude

that the majority did not err in dismissing defendant's IAC claim without prejudice

to defendant's right to file a subsequent motion for appropriate relief, and in light of

our disposition of the case, we decline to address the issue further. Accordingly, we

affirm the Court of Appeals majority on this issue.

## III.    Conclusion

¶ 33        We conclude the Court of Appeals majority erred in part in holding there was

no plain error below. First, we hold that the trial court committed plain error in permitting Ms. Parsons to testify in the absence of physical evidence that Jane was "sexually abused." Second, we hold the trial court also committed plain error by permitting Ms. Parsons to implicitly identify defendant as the perpetrator of the alleged abuse. However, we affirm the Court of Appeals' dismissal of defendant's IAC claim. For the foregoing reasons, we conclude defendant is entitled to a new trial. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice BERGER did not participate in the consideration or decision in the case.

Chief Justice NEWBY dissenting.

This case requires us to determine whether the trial court plainly erred when it permitted Ann Parsons—a qualified nurse practitioner—to testify based on her education, training, and experience that she diagnosed the seven-year-old Jane as sexually abused. To demonstrate plain error, defendant must show that the error deprived him of a fair trial and that it prejudiced the outcome—i.e., that the error had a probable impact on the jury's verdict. When viewed as a whole, the record shows the physical and psychological evidence corroborates the victim's consistent account of the sexual abuse she suffered. Thus, defendant cannot show that the alleged error in admitting Parsons's testimony had a probable impact on the jury's verdict. I respectfully dissent.

Where a defendant does not object to an error at trial, appellate review is limited to determining whether the trial court committed plain error. *See State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006) (holding claimed error in admission of expert vouching testimony was subject to plain error review). "[P]lain error is to be 'applied cautiously and only in the exceptional case.'" *State v. Towe*, 366 N.C. 56, 65, 732 S.E.2d 564, 569 (2012) (Newby, J., dissenting) (alteration in original) (quoting *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012)). "Under *Lawrence* 'a defendant must demonstrate that a fundamental error occurred at trial'

and 'must establish prejudice.' " *Id.*, 732 S.E.2d at 570 (quoting *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334). A fundamental error is "something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or that "amounts to a denial of a fundamental right of the accused." *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). A fundamental error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378). Moreover, the error must be prejudicial to the defendant. To demonstrate prejudice, a defendant must show "that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Id.* (quoting *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334).

¶ 36    Given the consistency of Jane's testimony during the investigation and at trial, as well as the physical and psychological evidence, Parsons's challenged testimony did not rise to the level of plain error. The jury's verdict did not hinge on Parsons's allegedly erroneous testimony. Rather, a review of the record shows Jane's credibility was well established through other means. Jane, seven years old at the time, gave a consistent account of the abuse in multiple conversations with her stepmother, law enforcement, and two different experts in forensic child abuse investigation at the Child Advocacy Clinic. Then, three years after the abuse, Jane's testimony at trial was consistent with this account. Jane's stepmother also testified that when Jane

originally told her of the abuse, her stepmother "could see that [Jane] was troubled and worried about something." Andora Hankerson, the forensic interviewer at the Child Advocacy Center, testified that Jane did not appear to be "coached" as to the details of the story. The State published Hankerson's report and played a video recording of Hankerson's interview of Jane for the jury, which were also consistent with Jane's account.

¶ 37 The jury also heard significant evidence regarding Jane's physical and psychological symptoms that supported her account. Though Jane was an outgoing, confident child, when the abuse occurred, Jane's behavior changed drastically. She became "fearful around strangers" and would "cling to [her stepmother] more in public," behaviors her stepmother "hadn't noticed before." Jane also began "wetting her bed four and five times a week. She became withdrawn. She had nightmares. She would wake up crying sometimes." Though Jane had successfully overcome bedwetting in the past and had experienced "a long stretch of time where she wasn't wetting the bed," her bedwetting began again after the sexual abuse. After receiving trauma therapy, Jane's symptoms subsided, though not completely.

¶ 38 Parsons, on the other hand, testified for approximately ninety minutes during the two-and-a-half-day trial. When asked "what was [her] diagnosis" of Jane, Parsons stated that she diagnosed Jane as "sexual[ly] abuse[d]." After discussing the foundation for her diagnosis, Parsons again stated that her finding was "that [Jane]

had been sexually abused." Moreover, Parsons testified that her treatment report recommended that Jane have "[n]o contact with [defendant] during the investigation" and that "any future contact with [defendant be] only to address therapeutic needs as determined by [Jane]'s therapist." Parsons's report was admitted into evidence and published to the jury. Even assuming these portions of Parsons's testimony were admitted in error,[1] defendant cannot demonstrate plain error because he cannot show prejudice—i.e., that these alleged errors had a probable impact on the jury's verdict.

¶ 39    The majority mischaracterizes this record and holds this case turned on Jane's credibility alone because there was no "direct evidence of sexual abuse." Therefore, the majority concludes that Parsons's testimony "stilled any doubts" in the jury's

---

[1] While the Court of Appeals and the majority of this Court have determined that Parsons's testimony regarding Jane's diagnosis is error, this is a unique case. Here the State laid the proper foundation for expert opinion testimony by demonstrating Parsons's education, training, and experience in "child maltreatment and the healthcare needs and requirements of children in that circumstance." The trial court then admitted Parsons to testify on "child abuse and forensic evaluation of children that have been abused." Parsons, along with Jane's stepmother, testified that Jane's psychological symptoms manifested physically in the form of Jane's bedwetting. Thus, it is questionable whether Parsons's testimony about Jane's diagnosis constitutes error. *See State v. Stancil*, 355 N.C. 266, 266–67, 559 S.E.2d 788, 789 (2002) (holding that expert witness may testify as to sexual abuse diagnosis when there is physical evidence of the abuse). Notably, however, the State did not petition this Court for review of that issue.

The majority of this Court also concludes that admission of Parsons's written report containing her treatment recommendations, along with Parsons's testimony about those recommendations, is error because Parsons's recommendations identified "defendant [a]s the one who committed the crime." As the Court of Appeals correctly noted, however, "[t]hat Jane alleged [d]efendant of the abuse cannot reasonably be disputed." *State v. Clark*, No. COA19-634, 2020 WL 1274899, at *3 (N.C. Ct. App. March 17, 2020) (unpublished). Simply put, it was not disputed at trial that Jane alleged defendant was the person who committed the sexual abuse. Thus, Parsons's testimony purportedly identifying defendant as the perpetrator cannot be error.

mind and had a probable impact on the jury's verdict. In so concluding, the majority erroneously relies on *State v. Towe*, which is distinguishable from this case. In *Towe*, this Court stated that the case "turned on the credibility of the victim" because the victim's "recitations of defendant's actions were not entirely consistent" and there was no physical evidence of the abuse. *Towe*, 366 N.C. at 63, 732 S.E.2d at 568. Here, however, Jane's testimony was consistent every time she recounted the events; her testimony did not raise the issue of credibility in the same manner as the victim's inconsistent testimony in *Towe*. Moreover, Jane's consistent testimony was supported by testimony about her physical symptoms—i.e., bedwetting—as well as psychological symptoms, including fearfulness, social withdrawal, and nightmares. Thus, *Towe* presented a different factual scenario than the case here.

¶ 40       When the evidence is viewed as a whole, taking into account the several witnesses who testified and the nature of Jane's symptoms, it is unlikely that Parsons's isolated statements regarding Jane's diagnosis or the treatment recommendations in her report had a probable impact on the jury's verdict. As such, defendant cannot demonstrate prejudice and these alleged errors did not amount to plain error. Therefore, the opinion of the Court of Appeals should be affirmed. I respectfully dissent.

Justice BARRINGER joins in this dissenting opinion.